749 A.2d 890

ALLSTATE INSURANCE CO., PLAINTIFF, v. A & A MEDICAL SUPPLIES, ET ALS, DEFENDANTS.

Superior Court of New Jersey
Law Division
Passaic County

Decided March 11, 1999.

*Anthony J. Verardi,* for plaintiff *(McDermott & McGee).*

*Paul J. Curreri* and *Andrew.J. Blair,* for defendants.

REISNER, J.S.C.

Pursuant to the No Fault Act (the Act), *N.J.S.A.* 39:6A–13(g), Allstate Insurance Company (Allstate) has filed an application with the court to compel A & A Medical Supplies (A & A) to disclose certain information concerning the cost of medical equipment for which A & A is seeking payment from Allstate. For the reasons set forth below, the application will be granted.

The Act, *N.J.S.A.* 39:6A–1 *et seq.* sets forth a comprehensive scheme to ensure that persons injured in automobile accidents will receive prompt payment of their medical bills, without regard to fault. The Act authorizes the Department of Banking and Insurance (Department) to adopt regulations to implement the Act including the promulgation of medical fee schedules limiting the amounts insurance companies are required to pay to "health care providers providing services or equipment" to accident victims. *N.J.S.A.* 39:6A–4.6; *N.J.S.A.* 39:6A–19. Accordingly, the Department has adopted detailed schedules of fees which providers may charge for new or used medical equipment, *N.J.A.C.* 11:3–29.6. The regulations also specify that the fees are the maximum amount which may be charged and that

> [n]othing in this subchapter shall . . . compel a PIP insurer . . . to pay more for any service or equipment than the provider's usual, customary and reasonable fee, even if such fee is well below the automobile insurer's . . . limit of liability as set forth in the fee schedules.
>
> [*N.J.A.C.* 11:3–29.4(a)]

The personal injury protection (PIP) provisions of the Act permit covered persons injured in auto accidents to assign to medical providers their right to reimbursement from insurance companies for the cost of necessary medical treatment and supplies. *N.J.S.A.* 39:6A–4. Before paying a claim, however, an insurance company has the right to seek information from the provider concerning the costs of any products or services provided. *N.J.S.A.* 39:6A–13(b). If the claim is not paid, the claimant

has the right to submit the claim to binding arbitration. *N.J.S.A.* 39:6A–5(h).

In this case A & A, a provider of medical equipment to covered persons, has submitted certain of its claims against Allstate to binding arbitration. The claims relate to accidents which occurred in 1996 and 1997. Allstate contends that it questions the reasonableness of the amounts A & A charged for medical equipment. Allstate contends, however, that without access to cost information (e.g., the wholesale cost A & A paid for the equipment and whether the equipment was new or used) Allstate cannot meaningfully present its defenses to the arbitrator.

It is A & A's position that the information disclosure provisions of *N.J.S.A.* 39:6A–13(b) only apply to doctors and hospitals and do not apply to retailers of medical supplies. A & A further contends that this section only requires disclosure of the cost of treatment of a patient and does not require disclosure of the cost of medical equipment. A & A also asserts that it is entitled to charge the prices set forth in the Department of Banking and Insurance PIP regulations, *N.J.A.C.* 11:3–29.6, as its usual and customary prices and that Allstate has no right to inquire into A & A's actual costs for the equipment. The court finds all of these contentions to be without merit.

The court concludes that A & A is subject to the disclosure provisions of *N.J.S.A.* 39:6A–13(b). First, it is clear that A & A has behaved as though it were subject to the Act, by taking assignments of benefits from auto accident victims and demanding PIP arbitrations pursuant to those assignments. The Act provides that PIP benefits are not assignable except to a "provider of service benefits." *N.J.S.A.* 39:6A–4. The Department of Banking and Insurance regulations which implement the PIP sections of the Act define "provider" as including providers of medical equipment, *N.J.A.C.* 11:3–29.2, and the regulations limit reimbursements to providers to an amount which represents their usual, customary and reasonable fee for the equipment. *N.J.A.C.* 11:3–29.4. In fact, A & A asserts that it relies on these regulations in setting its prices for its equipment.

■ It would be anomalous to allow A & A to claim the benefits of the Act as a provider while escaping compliance with those provisions designed to ensure that providers only receive reasonable fees. Although section 13(b) of the Act does not specifically refer to medical equipment retailers, it specifically requires cost disclosures by "every physician, hospital, clinic or other medical institution" that provides "any products" in relation to a bodily injury which is the subject of a claim for PIP benefits. In light of the obvious purpose of the Act to contain health care costs for the treatment of auto accident victims and prevent fraud, see, *State Farm Mutual Automobile Insurance Company v. Dalton,* 234 *N.J.Super.* 128, 136–137, 560 *A.*2d 683 (App.Div.1989), the above cited provisions read together compel the conclusion that for purposes of section 13(b) a medical equipment supplier is a "medical institution," which is subject to the pricing and disclosure provisions of the Act and regulations. *See Goff v. Hunt,* 6 *N.J* . 600, 606, 80 *A.*2d 104 (1951) ("The parts of a statute are to be viewed in relation to the whole and the motive which led to the making of the law, and reconciled if possible.").

This conclusion is buttressed by the 1998 amendments to the Act, *P.L.* 1998, *c.* 21.[1] In the 1998 amendments, the Legislature specifically defined "health care provider" as including providers of health care supplies including durable medical goods. *N.J.S.A.* 39:6A–2(*l*). This term was not defined in the previous version of the Act, although it was defined in the regulations. *N.J.A.C.* 11:3– 29.2. The amendments also specifically require "health care providers" which have provided any "products" to disclose costs of treatment to an insurance company upon request. *N.J.S.A.* 39:6A–13(b).[2] Obviously, where products are supplied as part of

---

[1] As of the date of this opinion, the relevant provisions of *P.L.* 1998, *c.* 21 have not yet gone into effect. See *P.L.* 1998, *c.* 21, section 74(a).

[2] The amendment deleted the words "clinic or other medical institution" from *N.J.S.A.* 39:6A–13(b), and replaced those words with "or other health care provider."

the treatment, the cost of the products must be disclosed. The preamble to *L.* 1998, *c.* 21 clearly expresses the Legislature's concern for containing costs and preventing overcharges. The court's reading of the amendments is consistent with the Legislature's intent. Allstate here contends that A & A may have charged a 900% mark-up over its wholesale cost for medical equipment. If true, such a practice could constitute the type of price gouging which the Act sought to prevent.

While it may be argued that the 1998 amendments are evidence that the Act as it existed at the time A & A provided the equipment in question here did not cover medical equipment providers, there is no indication that the Legislature ever regarded the Department's regulations as *ultra vires.* This court concludes that the amendments simply acknowledged and confirmed the correctness of the Department's interpretation of the Act, preamendment, as applying to medical equipment suppliers.

Clearly, it is within the intent of the Act, both old and new versions, to promote cost containment and prevent price gouging. Unless an insurer can determine what a supplier is paying for a piece of equipment, whether the equipment is new or used, and what the manufacturer's suggested retail price is, the insurer cannot determine whether the supplier's fee is "reasonable" pursuant to *N.J.A.C.* 11:3–29.4. It is not enough for a supplier to show that its fee is "usual and customary;" the fee must also be reasonable. If the supplier charges a huge mark-up over the wholesale price, that may be unreasonable. Likewise, if a supplier charges the same price for used equipment as it does for new equipment, that may be unreasonable and contrary to the Department's fee schedules. *N.J.A.C.* 11:3–29.6. *See Thermographic Diagnostics v. Allstate,* 125 *N.J.* 491, 516–518, 593 *A.*2d 768 (1991).

This is not to say that the insurer is entitled to conduct the equivalent of a full-fledged rate hearing every time a medical supplier files an application for PIP reimbursement for a piece of medical equipment; that would defeat the legislative goal of providing for expeditious reimbursement for medical expenses of

accident victims. *Andrews v. Allstate Ins. Co.*, 280 *N.J.Super.* 198, 201–202, 654 *A.*2d 1039 (Law Div.1994). Allowing an insurer to discover basic pricing information is a reasonable middle ground, which should enable the insurer to contest the reasonableness of A & A's pricing at arbitration if discovery reveals factual grounds to do so. Moreover, it should not be necessary for Allstate to conduct separate discovery as to each arbitration request submitted by A & A. Once Allstate has had discovery concerning each type of equipment A & A supplies (e.g., whirlpools, TENS units, etc.), absent special circumstances it should not be necessary to repeat the inquiry in each separate case.

For the foregoing reasons, the application will be granted. Allstate's counsel will submit an appropriate form of order.