982 A.2d 1 (2009)
410 N.J. Super. 270
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Plaintiff-Appellant,
v.
BERGEN AMBULATORY SURGERY CENTER, Defendant-Respondent.
DOCKET NO. A-0307-08T2.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 2009.
Decided October 7, 2009.
Daniel J. Pomeroy, Springfield, argued the cause for appellant (Mortenson and Pomeroy, attorneys; Mr. Pomeroy and Karen E. Heller, on the brief).
A. Ross Pearlson, Newark, argued the cause for respondent (Sills, Cummis & Gross, attorneys; Mr. Pearlson, of counsel and on the brief; William R. Tellado, on the brief).
*2 Before Judges STERN, SABATINO, and J.N. HARRIS.
The opinion of the court was delivered by
JONATHAN N. HARRIS, J.S.C. (temporarily assigned).
We consider when a private passenger automobile insurer is entitled to obtain litigational discovery for use in the legislatively-mandated arbitral forum that resolves disputes over Personal Injury Protection (PIP) coverage.[1] Plaintiff appeals from an adverse decision in a summary action commenced in the Law Division seeking expansive discovery for use in PIP arbitrations against an assignee health service provider. Because recourse to the courts for discovery materials sought to be used in a PIP arbitration is narrowly constrained by statute, we affirm Judge Joseph J. Riva's dismissal of plaintiff's complaint.

I.

A.
New Jersey Manufacturers (NJM) writes private passenger automobile insurance policies in New Jersey containing PIP coverage. Its adversary in this action is the Bergen Ambulatory Surgery Center (BASC), which is a licensed ambulatory care facility that provides out-of-hospital surgery together with other diagnostic and treatment procedures to persons injured in automobile accidents. BASC accepts assignments of PIP benefits from its patients and thereafter directly bills insurers such as NJM for services (facility fees) provided to the assignor-insureds. If BASC and NJM are of one mind about BASC's billings, the matter is resolved with a business to business payment. If not, BASC initiates PIP arbitration proceedings pursuant to N.J.S.A. 39:6A-5.1(a):
a. Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage pursuant to section 4 of P.L. 1972, c. 70 (C. 39:6A-4), section 4 of P.L. 1998, c. 21 (C. 39:6A-3.1) or section 45 of P.L. 2003, c. 89 (C. 39:6A-3.3) arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.
[N.J.S.A. 39:6A-5.1(a).]

B.
The Legislature structured a detailed and careful arrangement for an alternative dispute resolution mechanism regarding PIP claims. To that end, it delegated primary responsibility to the Commissioner of the Department of Banking and Insurance (DOBI) to implement the manner and means of addressing the steady stream of contested PIP claims. N.J.S.A. 39:6A-5.1(b). The frequent disputes resulted in the adoption of regulations to administer a process resembling arbitration, which operates largely outside of the publicly-funded institution of the judiciary. N.J.A.C. 11:3-5.1 to -5.12.
Among its features, PIP dispute resolution covers a wide range of disputes, as defined in N.J.A.C. 11:3-5.2:
"PIP dispute" includes, but is not limited to, matters concerning:
1. Interpretation of the insurance contract's PIP provisions;

*3 2. Whether the medical treatment or diagnostic tests are in accordance with the provisions of applicable statutes and rules for the basic and standard policies and in compliance with the terms of the policy;
3. Eligibility of the treatment or service for compensation or reimbursement, including whether the injury is causally related to the accident and the application of deductible and copayment provisions;
4. Eligibility of the provider performing the service to be compensated or reimbursed under the terms of the policy and the provisions of N.J.A.C. 11:3-4, and including whether the provider is licensed or certified to perform the treatment or service;
5. Whether the treatment was actually performed;
6. Whether the diagnostic tests performed are recognized by the Professional Boards in the Division of Consumer Affairs, Department of Law and Public Safety, administered in accordance with their standards, and approved by the Commissioner at N.J.A.C. 11:3-4;
7. The necessity and appropriateness of consultation with other health care providers;
8. Disputes involving the application of, or adherence to, the automobile insurance medical fee schedule at N.J.A.C. 11:3-29;
9. Whether the treatment or service is reasonable, necessary and in accordance with medical protocols adopted by the Commissioner at N.J.A.C. 11:3-4; or
10. Amounts claimed for PIP income continuation benefits, essential services benefits, death benefits and funeral expense benefits.
[N.J.A.C. 11:3-5.2.]
Presently, the process is administered by the National Arbitration Forum (NAF), a dispute resolution organization pursuant to N.J.A.C. 11:5-5.4, which promulgated a comprehensive series of administrative rules to govern the arbitration process. See Rules For the Arbitration of No-fault Disputes in the State of New Jersey, Effective January 1, 2008.[2] Dispute resolution professionals (DRPs) handle the day-to-day application of NAF's administrative rules, interpret applicable regulations and laws, find the facts, and determine the ultimate outcome of the parties' dispute. These professionals are required, by N.J.A.C. 11:3-5.5, to be:
1. An attorney licensed to practice in New Jersey with at least 10 years of experience in cases involving personal injury or workers' compensation;
2. A former judge of the Superior Court or the Workers' Compensation Court, or a former Administrative Law Judge; or
3. Any other person, qualified by education and at least 10 years' experience, with sufficient understanding of automobile insurance claims and practices, contract law, and judicial or alternate dispute resolution practices and procedures.
[N.J.A.C. 11:3-5.5.]
Discovery disputes under NAF's administrative rules are resolved by DRPs under the lens of NAF Rule 24, which recognizes that "[t]he parties may offer such evidence as is relevant and material to the case." Additionally, the Legislature expressly provided for discovery of the injured person's *4 medical circumstances pursuant to N.J.S.A. 39:6A-13(b):
b. Every physician, hospital, or other health care provider providing, before and after the bodily injury upon which a claim for personal injury protection benefits or medical expense benefits is based, any products, services or accommodations in relation to such bodily injury or any other injury, or in relation to a condition claimed to be connected with such bodily injury or any other injury, shall, if requested to do so by the insurer or the Unsatisfied Claim and Judgment Fund against whom the claim has been made, furnish forthwith a written report of the history, condition, treatment, dates and costs of such treatment of the injured person, and produce forthwith and permit the inspection and copying of his or its records regarding such history, condition, treatment dates and costs of treatment. The person requesting such records shall pay all reasonable costs connected therewith.
[N.J.S.A. 39:6A-13(b) (emphasis added).]
Moreover, the Legislature fortified parties' rights to such discovery data by providing limited access to the courts pursuant to N.J.S.A. 39:6A-13(g):
g. In the event of any dispute regarding an insurer's or the Unsatisfied Claim and Judgment Fund's or an injured person's right as to the discovery of facts about the injured person's earnings or about his history, condition, treatment, dates and costs of such treatment, or the submission of such injured person to a mental or physical examination subject to the provisions of this section, the insurer, Unsatisfied Claim and Judgment Fund or the injured person may petition a court of competent jurisdiction for an order resolving the dispute and protecting the rights of all parties. The order may be entered on motion for good cause shown giving notice to all persons having an interest therein. Such court may protect against annoyance, embarrassment or oppression and may as justice requires, enter an order compelling or refusing discovery, or specifying conditions of such discovery; the court may further order the payment of costs and expenses of the proceeding, as justice requires.
[N.J.S.A. 39:6A-13(g) (emphasis added).]

C.
Turning now to the fine points of this case, BASC  as assignee of accident victims' PIP claims  initiated PIP arbitrations because NJM had globally denied payment unless BASC first produced a comprehensive billing and payment history for the preceding year for each of the requested services. NJM further demanded that BASC's financial history include a complete schedule of all charges submitted to and payments received from private and public sources, including automobile insurance carriers, health insurers, managed care organizations, workers' compensation managed care organizations, and Medicare. NJM deemed the requested information necessary to fulfill its obligation to review the reasonableness of BASC's facility fees before paying all, part, or none of the PIP claims.[3]
At the core of the dispute are PIP-related services that do not enjoy specific references in DOBI's fee schedules. An insurer's maximum limit of liability for any *5 health care service not set forth in the adopted fee schedule shall be the usual, customary, and reasonable rate (UCR). N.J.A.C. 11:3-29.4(e). NJM asserts that as part of its admeasurement of BASC's UCR, it is entitled to the elaborate array of data demanded from BASC, particularly the payment history for similar services by other payors.
Payment history, according to NJM, more finely calibrates the UCR calculus, which was recognized in Coalition for Quality Health Care v. Dept. of Banking and Insurance, 358 N.J.Super. 123, 126, 817 A.2d 347 (App.Div.2003) ("The charged-fee versus paid-fee issue must be resolved at some point. It is better resolved now than later."). BASC's position disputes the logical underpinnings of the use of payment data to determine a UCR. Nevertheless, it does not entirely dismiss the evidential relevancy of such information. Rather, BASC asserts that because DOBI's regulatory framework does not require the disclosure of such information in the UCR context, and individual DRPs are fully capable of addressing the discovery issues on a case by case basis, resort to the litigational remedies of N.J.S.A. 39:6A-13 is an unwarranted erosion of the PIP alternative dispute resolution system.
The record reveals several occasions where DRPs were presented with NJM's requests for discovery rulings relating to BASC's payment history. Although most of those rulings were decidedly unfavorable to NJM, they were, indeed, considered on a case by case basis. Notwithstanding its status as an aggrieved party, NJM apparently did not pursue its rights to appeal such adverse discovery rulings either to a panel of three DRPs under NAF Rule 42 or to the Superior Court pursuant to N.J.S.A. 2A:23A-13.
Instead of following this individualized approach, which would allow a tailored disposition fitted to the circumstances of the particular PIP case, NJM commenced the instant petition, relying on N.J.S.A. 39:6A-13(g). Although not styled as an action under the Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, NJM seeks systemic relief that would swallow the DRPs' determinations, the NAF's administrative rules, and DOBI's regulations in one fell swoop. We hold that such a far-reaching approach is unavailable and inappropriate under N.J.S.A. 39:6A-13(g) and would contravene the Legislature's express preference for limited judicial oversight regarding PIP disputes.

II.
Generally speaking, there exists a well-founded gap between the processes of litigation in court and ordinary arbitration. Indeed, arbitration proceedings are intended to be insulated from "obstruction" from the courts. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). That is, except for unusual circumstances, each process functions independently of each other, thereby preserving the strengths, and minimizing the weaknesses, of each.
Arbitration is not a perfect system of justice, but it enjoys several virtues. Arbitration is designed primarily to avoid the complex, time-consuming, and costly alternative of litigation. "Arbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized." Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179, 187, 430 A.2d 214 (1981). It ought to serve as a substitute, and not a catalyst, for litigation.
In litigation, with its fulsome discovery processes and refined evidentiary rules, parties opting for state-sponsored dispute *6 resolution (and those who have no other choice) participate in a predictable and well-traveled course emblemized by a fair process procedurally followed and an application of principled law. In arbitration, with abbreviated discovery and expansive treatment of evidence, parties are engaged in simple, inexpensive, and expeditious dispute resolution. We need not review here the fundamental and important differences between litigation in a court and an arbitration. It is enough to say that the Legislature found much to commend an administratively-managed system of dispute resolution in the realm of PIP disagreements. We are hard pressed to override its policy determinations and substitute judicial notions of litigation processes with a global ruling on the discoverability of BASC's payment history.
There is nothing in N.J.S.A. 39:6A-13(g) that evinces a legislative preference for court intervention to provide the type of sprawling discovery NJM seeks here. The relevancy of the investigatory phase disclosures is no more important than preserving the proper balance of power between the judiciary and DOBI's regulatory scheme. Even the statute's undefined reference to costs as being discoverable does no more than require disclosure of "costs of such treatment of the injured person." N.J.S.A. 39:6A-13(b). NJM interprets this provision to a greater degree than appropriate, suggesting that it is an invitation to essentially audit the books of BASC. Plainly, such an examination would in most cases be out of place in an individualized setting such as a PIP arbitration. Moreover, it cannot be used as a vehicle in this litigation to usurp the rate-setting responsibilities of DOBI. In this vein, the legislative reference to "costs" means what it says, and no more: during the claims review process, an insurer may obtain individualized data from the health service provider regarding the costs to provide services to its patient, which does not include payment information about other payors for similar services provided to other patients.
Our decision should not be misunderstood. We do not advance the notion that payment information is wholly irrelevant to the calculation of UCR in BASC's PIP arbitrations. We neither determine whether providing payment information would be unduly burdensome to BASC and subject to a protective order, nor decide for the DRPs  under the particular facts of a given case  whether NJM's discovery request should be granted in order to equalize the information available to both sides. We do not intend to curtail or constrain in any way DOBI's ability to regulate on a macro scale the production of payment data from any health service providers. Nor do we question the underpinnings and holdings of either In re Adoption of N.J.A.C., 11:3-29 or Coalition v. Dept. of Banking.
Instead, all we decide is that NJM is not entitled to relief in the Law Division under the rubric of N.J.S.A. 39:6A13. Whether the denial of discovery to obtain payment information would be remediable in a proceeding under the New Jersey Alternative Procedure for Dispute Resolution Act, N.J.S.A. 2A:23A-1 to -30, remains for another day. See, e.g., N.J.S.A. 2A:23A-10(b) (a discovery determination may be reviewed in the Superior Court when the umpire is shown to have improperly exceeded his discretion); N.J.S.A. 2A:23A-13 (an award may be vacated or modified if the umpire committed prejudicial error in applying applicable law to the issues and facts presented for alternative resolution).

III.
If BASC bills NJM for exorbitant facility fees, the remedy is not to overwhelm BASC and the trial courts with discovery litigation. Rather, NJM is to participate *7 fully in the PIP arbitration, develop  if possible  through independent means[4] the appropriate UCR or convince the DRP to grant more far-reaching discovery than heretofore, and then attempt to persuade the trier of fact of the righteousness of its position. A premature entanglement of the judiciary in PIP arbitrations would run at cross purposes with the legislative goal of achieving the four objectives of the "No Fault Act," N.J.S.A. 39:6A-1 to  35: "(1) prompt reparation to accident victims[;] (2) cost containment of automobile insurance[;] (3) availability of insurance[;] and (4) easing of the judicial caseload." Cobo v. Market Transition Facility, 293 N.J.Super. 374, 384, 680 A.2d 1103 (App. Div.1996).
The judgment dismissing the complaint is affirmed.
NOTES
[1] Recently, another panel of this court ably recited the history of PIP reimbursement legislation and its implementation under the "No Fault Act," N.J.S.A. 39:6A-1 to  35. In re Adoption of N.J.A.C. 11:3-29, 410 N.J.Super. 6, 979 A.2d 770 (App.Div.2009). We will not repeat it here.
[2] Available at: http://www.nj-no-fault.com/ users/nj/resources/2008No-FaultArbitration Rules.pdf (last visited on September 24, 2009).
[3] N.J.S.A. 39:6A-5(g) provides that PIP benefits are overdue unless paid within sixty days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. An additional forty-five days is allowed to permit the insurer to investigate the claim.
[4] Nothing prevents NJM from doing what insurers are expected to do: independently consult with appropriate databases for help in determining the reasonableness of the facility fees. Such an endeavor will provide protection against arbitrary determinations to the health care providers. Nevertheless, if a health care provider and the insurer maintain a disagreement, the option of filing for arbitration remains. N.J.S.A. 39:6A5.1. There is accountability and review.