5 A.3d 166 (2010)
416 N.J. Super. 418
SELECTIVE INSURANCE COMPANY OF AMERICA, Selective Way Insurance Company, Selective Insurance Company of South Carolina, Selective Insurance Company of the South East, Selective Insurance Company of New York, and Selective Auto Insurance Company of New Jersey, Plaintiffs-Respondents,
v.
HUDSON EAST PAIN MANAGEMENT OSTEOPATHIC MEDICINE AND PHYSICAL THERAPY, Essex Surgery Center L.L.C., Essex Pain Management, Tower West Chiropractic, Giordano Chiropractic, and Advanced Neurological Orthopedic Associates, Defendants-Appellants, and
Sente and Ferraro Chiropractic, Defendants.
No. A-0433-09T1.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2010.
Decided October 7, 2010.
*167 Sean A. Smith argued the cause for appellants (Brach Eichler, LLC, attorneys; Charles X. Gormally, of counsel; Mr. Smith, on the brief).
Gordon S. Graber argued the cause for respondents (Sullivan and Graber, attorneys; Mr. Graber, of counsel; Chryzanta K. Hentisz, Morristown, on the brief).
Before Judges PARRILLO, YANNOTTI and ESPINOSA.
The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue is whether, pursuant to the Uniform Declaratory Act, N.J.S.A. 2A:16-50 to -62, a private passenger automobile insurer providing personal injury protection (PIP) coverage may seek expansive discovery from assignee health service providers in its internal investigation of suspected insurance fraud. Relying on the PIP statute's discovery provision, N.J.S.A. 39:6A-13(g), and the cooperation clause of the insurance policies under which benefits were being sought, the trial court declined to dismiss the insurer's complaint and instead compelled the health service providers to disclose extensive information verifying their compliance with governing statutes and regulations and hence their eligibility for No Fault benefits as assignees of plaintiffs' insureds. Defendants appeal and we reverse.
Plaintiffs are Selective Insurance Company of America and several related entities (collectively Selective or plaintiff) that are licensed to write private passenger automobile insurance policies in New Jersey containing PIP coverage. Defendants are medical providers[1] that have submitted *168 claims to plaintiff for payment of PIP benefits for healthcare services purportedly performed for plaintiff's insureds involved in motor vehicle accidents. Selective's insureds had executed Assignment of Benefits clauses giving defendants the contractual right to seek PIP reimbursement directly from Selective for the health care services rendered to the assignors-insureds. Consequently, defendants directly bill Selective and, if Selective agrees to defendants' billings, the matter is resolved with a business-to-business payment. If not, defendants may demand PIP arbitration pursuant to N.J.S.A. 39:6A-5.1(a), which provides:
Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage pursuant to [N.J.S.A. 39:6A-4] [N.J.S.A. 39:6A-3.1] or [N.J.S.A. 39:6A-3.3] arising out of the operation, ownership maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.
[N.J.S.A. 39:6A-5.1(a).]
According to Selective, having discovered common ownership and interlocking management among several of the defendant entities,[2] plaintiff also "observed a systematic and common treatment pattern among those of its insureds who [are] treated at the defendant medical providers." As illustrative of what it detected to be a pattern of referrals among defendant entities, Selective cited the experiences of three such patients. One of plaintiff's insureds, for example, had a consultation for pain management with Dr. Roman Kosiborod at Hudson East, and was then treated for spinal injections the next day at Essex Surgery by Dr. Kosiborod. Another of Selective's insureds had multiple consultations and treatments with the defendant entities. The patient had a pain management consultation at Essex Pain on September 14, 2005, which Dr. Lipsky claimed to perform in a subsequent letter to Selective. Dr. Lipsky's letter stated that he was referring the insured to Essex Surgery for spinal injections. However, the consultation was later billed by Dr. David Abend, at a different entity, Essex Surgery, instead of Dr. Lipsky. Dr. Lipsky later billed for the spinal injections referenced in his letter, at Essex Surgery.
Selective also perceived discrepancies in the underlying medical documentation. The Health Insurance Claim Form (HICF) includes a section for the physician to include either an Employer Identification Number (EIN) or Taxpayer Identification Number (TIN). On several of the forms, multiple providers, including Dr. Abend, Dr. Lipsky, and Dr. Kosiborod, billed Selective for Essex Surgery under their individual names but using the same EIN.
According to Selective, this billing practice, as well as the treatment patterns observed, raised questions concerning the inter-relationship among defendant medical *169 providers and possible unlawful physician self-referrals to medical facilities in which the referring provider has a significant beneficial interest. See N.J.S.A. 45:9-22.5(a) (the Codey Law) ("A practitioner shall not . . . refer a patient to a health care service in which the practitioner, or the practitioner's immediate family, or the practitioner in combination with the practitioner's immediate family has a significant beneficial interest. . . .")
Prompted by this suspicion, Selective requested additional, wide-ranging information from defendants about their corporate structure and ownership, and the identities of their employees. Specifically, Selective sought materials related to:
(1) ownership of defendant facilities;
(2) compliance with the Department of Health and Senior Services (DHSS) and Board of Medical Examiners (BME) regulations, requiring disclosure of the surgery center's medical director;
(3) identities and credentials of persons performing services at the facilities, including employees and independent contractors; and
(4) identities of any companies providing billing or management services to the defendants.
Plaintiff asserted that this information was necessary to evaluate whether defendants had complied with statutory and regulatory provisions regarding "self-referral and kickbacks," and with N.J.A.C. 8:43A-1.1 to -33.4.
Defendants did not comply with Selective's request,[3] but continued to submit claims for benefit payments and file arbitration demands. Consequently, claiming that defendants were preventing plaintiff "from completing [its] contractually authorized and statutorily mandated investigation of the defendants' claims for PIP benefits," Selective filed a declaratory judgment action in the Law Division, seeking a declaration that defendants must provide information and documents pursuant to the requests attached to its verified complaint,[4] or that in the event of the defendants' failure to comply, Selective would no longer be required to make further PIP payments. Plaintiff also filed an order to show cause why the relief sought should not be granted, claiming entitlement to the requested information under the cooperation clause of the Selective insurance policy[5] and pursuant to the discovery provision of the PIP statute, N.J.S.A. 39:6A-13(g).
Defendants filed a motion to dismiss in lieu of answer. Following argument, the judge denied the motion to dismiss and ordered defendants to comply with Selective's discovery requests, excepting a few interrogatories and notices to produce that were withdrawn without prejudice. The judge reasoned:
I'm satisfied that a review of the billing information submitted raises questions *170 concerning the use of the TIN number, whether it's inadvertent or otherwise.. . which raises the specter of some type of . . . conduct warranting further investigation. . . . [It may] fall short of actionable fraud, but the public policy of the State requires that insurance companies investigate and take steps to try to prevent fraud at the earliest opportunity.
[G]iven the legislative scheme here, I am satisfied that there are sufficient facts articulated in the [c]omplaint, as well as the related documents submitted, which warrant the application being granted. . . . With regard to the proposed first set of Interrogatories and Notice to Produce, I'm satisfied that the information is sufficiently limited to be produced and hopefully address these issues and in a businesslike way, which will obviate the need for further proceedings in connection with this matter.
In denying defendants' subsequent motion for reconsideration, the judge held that discovery may be compelled to allow the insurer to investigate even the possibility of fraud:
[I]t was my feeling then, as it is now, that the statutory scheme that regulates these types of medical expenses has to be read as a whole, and you can't just pick out selected parts.
And it seems to me that this type of a [sic] investigation is properly conducted by the insurance carrier as a defense to a possible fraud and that . . . insurance companies have been charged with this additional layer of responsibility, in part, to alleviate the expenditure of governmental resources in this area. So, I am satisfied that the motion was previously granted and should not be reconsidered.
We then granted a stay pending appeal.
On appeal, defendants maintain that the trial court erroneously expanded the reach of the PIP statute to create a "private cause of action to seek discovery well beyond that authorized in N.J.S.A. 39:6A-13(g)," and that they are not bound by the cooperation clause of the assignors-insureds' contract with Selective. We agree.

I.
The essential issue is whether a cooperation clause in an automobile insurance policy is binding on an assignee of the right to payment of PIP benefits, and enforceable by the insurer against the medical provider through a declaratory judgment action. Indisputably, such a provision that requires an insured to cooperate is a condition precedent to recovery of policy benefits. See Griggs v. Bertram, 88 N.J. 347, 359-60, 443 A2d 163 (1982); New Jersey Eye Ctr., P.A. v. Princeton Ins. Co., 394 N.J.Super. 557, 570, 928 A.2d 25 (App.Div.), certif. denied, 193 N.J. 275, 937 A.2d 977 (2007); Pearl Assurance Co. v. Watts, 58 N.J.Super. 483, 490, 156 A.2d 725 (App.Div.1959); see also 8 Appleman, Insurance Law & Practice, § 4771, p. 151 (1942). The question here is whether the provision extends the duty to cooperate to assignees of the insured's right to insurance proceeds.
It is classic hornbook law that the assignment of a contract right does not also delegate its duties. "While an `assignment' of a contract right extinguishes the right in the assignor and recreates the same right in the assignee, it is impossible to `assign' a duty. . . . [O]ne assigns rights but delegates duties. . . ." 9 Corbin on Contracts § 47.1 (John E. Murray, Jr. ed. 2007) (emphasis added). Unless the assignee expressly assents to assume the duty or was a party to the original agreement, "no action can be maintained against him [for non-performance of the *171 duties], either by the assignor, or by the third party as a beneficiary." Corbin on Contracts, supra, § 47.6 (emphasis added). See also Taliaferro v. Stevenson, 58 N.J.L. 165, 166, 33 A. 383 (E. & A.1895); In re Liquidation of Integrated Resources Life Ins. Co., 562 N.W.2d 179, 182-83 (Iowa 1997); Rosenberg v. Son, Inc., 491 N.W.2d 71, 74 (N.D.1992); Boswell v. Lyon, 401 N.E.2d 735, 742 (Ct.App.Ind.1980).
Here, there is no evidence to suggest that the assignment is other than a straightforward transfer of the right to receive payment. Nothing in the record suggests defendants agreed to perform the duties otherwise remaining with the assignor. Nor are defendants parties to the insurance contract or any subsequent agreement. Indeed, in its declaratory judgment complaint, Selective refers to the assignment as only assigning "the contractual right to seek personal injury protection (PIP) reimbursement from Selective which was rendered to Selective's insureds." (emphasis added). There is no mention of any delegation of duty, let alone of the duty to cooperate. Thus, while the obligation to cooperate remains at all times with the insureds, their assignees owe no duty of performance to the obligor.
The Florida Court of Appeals sitting en banc in Shaw v. State Farm Fire & Casualty Co., 37 So.3d 329 (Fla.Dist.Ct.App. 2010), confronted this very issue. In Shaw, an insurance company disclaimed coverage because a medical provider, who had received an assignment of the right to payment, failed to comply with a cooperation clause and did not submit to an examination under oath (EUO). Id. at 331. The insured's cooperation provision required that "any person or organization making claim or seeking payment . . . must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require." Id. at 330. While the court agreed that compliance with the cooperation provision and EUO clause was a condition precedent to coverage, it found that it was the insured, not the medical provider, who was required to so comply. The court reasoned:
[T]he assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty. Assignment of a right to payment under a contract does not eliminate the duty of compliance with contract conditions, but a third-party assignee is not liable for performance of any duty under a contract, unless he was a party to the agreement or has become a party by subsequent agreement. Absent such an event. . . the duty of performance of the conditions to the right of payment remains with the assignor. In other words, the assignee of a contract right owes no duty of performance to the obligor.

What that means in the context of this case is that Shaw, as the assignee of the right of the insured to payment under the State Farm insurance contract, had no duty to perform any covenant under the insurance contract because he never agreed to do so. An obligor cannot unilaterally attach conditions to the obligee's right of assignment and cannot bind the assignee to any performance under the contract unless the assignee has agreed.
[Id. at 332 (emphasis added).]
The Shaw court agreed with the insurance company that an assignee takes subject to all defenses of the obligor against the assignor, including non-performance by the assignor. However, it found that

the notion that, because an assignee `steps into the shoes of the assignor and takes the assignment subject to all defenses *172 of the obligor,' the assignee assumes the obligations of the assignor, simply misapplies the rule. The rule means that the right of the assignee under the contract is no better than its assignor's rights. If the assignor is entitled to be paid, the assignee is entitled to be paid, but if the assignor is not entitled to be paid because of some failure of performance on the part of the assignor, then the assignee is not entitled to be paid either. By accepting an assignment of a right to be paid, the assignee does not obligate itself to perform any covenant under the contract.
. . . .
Here, [the insured] has agreed that whatever monies he is entitled to receive from his automobile insurance policy on account of the care he has been given is payable to Shaw. If no monies are due and owing because of the failure of [the insured] to perform some covenant under the policy, including the examination under oath, then Shaw has no claim against State Farm, precisely because it is subject to State Farm's defenses against the insured. But State Farm may not include in the insurance contract any requirement of performance on the part of the assignee that conditions the right to payment. To the extent that State Farm's policy may have such a provision, it is simply unenforceable.
[Id. at 333 (emphasis added).]
Our decision in New Jersey Automobile Full Insurance Underwriting Ass'n v. Jallah, 256 N.J.Super. 134, 606 A.2d 839 (App.Div.1992), relied on by Selective, is not to the contrary. There, we addressed whether the New Jersey Full Insurance Underwriting Association (JUA), following its termination of PIP benefit payments upon determining that further treatment is unnecessary or unjustifiable, may require the PIP claimant to submit to an examination or statement under oath. Id. at 136, 606 A.2d 839. Recognizing that JUA's request "transcend[ed] the narrow categorization as discovery in arbitration," id. at 141, 606 A.2d 839, we nevertheless answered the inquiry in the affirmative, finding that the "investigatory duties imposed upon passenger automobile insurers . . . include acquisition of information which may be used to compile patterns of suspect claims involving, e.g., given care providers. . . ." Ibid. Significant, however, for present purposes, is the fact that the JUA was seeking examination under oath of the insured and not his assignee.
Nor is our decision in State Farm Mutual Automobile Ins. Co. v. Dalton, 234 N.J.Super. 128, 560 A.2d 683 (App.Div. 1989), supportive of Selective's position. In that case, we required, as a condition of the recovery of PIP benefits, not only that the insured wife submit to a physical examination, but also that her assignee husband, who provided her with chiropractic services, verify such treatment. Id. at 134-35, 560 A.2d 683. Again, we relied on the State's interest in the prevention of fraud. Id. at 137, 560 A.2d 683. More important, however, we noted "the unique facts of th[at] case in which the person who is asserted to have received payment for providing covered `medical services' is himself the named insured under the same policy and the husband of the person receiving those services. . . ." Ibid. (emphasis added). Furthermore, the information in Dalton was only what was required under the PIP arbitration statute, N.J.S.A. 39:6A-13(b); the only additional requirement was that it be verified because of the "unique" circumstances of the case. Ibid.
Thus, we are persuaded that the cooperation clause of Selective's insurance contract, although binding on its insureds, does not extend to defendants as assignees. *173 Therefore, it is not enforceable against defendants in the declaratory judgment action filed by plaintiff.

II.
Not only does Selective's broad discovery request lack a basis in the insurance contract, it also contravenes New Jersey's comprehensive PIP statutory scheme providing for arbitration of disputed nofault benefit claims submitted by health care providers to insurance companies. See New Jersey Mfrs. Ins. Co. v. Bergen Ambulatory Surgery Ctr., 410 N.J.Super. 270, 982 A.2d 1 (App.Div.2009) (Bergen Ambulatory). The Legislature has expressly addressed the insurer's need for information from medical providers who make claims for PIP benefits by requiring, when requested by the insurance company, that the provider furnish a "written report of the history, condition, treatment, dates and costs of such treatment of the injured person, and produce forthwith and permit the inspection and copying of his or its records regarding such history, condition, treatment dates and costs of treatment." N.J.S.A. 39:6A-13(b); see also Allstate Ins. Co. v. A & A Med. Supplies, 330 N.J.Super. 360, 363, 749 A.2d 890 (Law Div.1999) (concluding that medical providers are likewise required to disclose the information required by N.J.S.A. 39:6A-13(b)). Such discovery also includes "facts about the injured person's earnings" and "the submission of such injured person to a mental or physical examination. . . ." N.J.S.A. 39:6A-13(g). Significant, for present purposes, the PIP statutory scheme establishes a mechanism for the resolution of disputes over the insurer's right to discovery, allowing the insurer to petition the court for relief:
In the event of any dispute regarding an insurer's . . . right as to the discovery of facts about the injured person's earnings or about his history, condition, treatment, dates and costs of such treatment.. ., the insurer . . . may petition a court of competent jurisdiction for an order resolving the dispute and protecting the rights of all parties.

[N.J.S.A. 39:6A-13(g) (emphasis added).]
It is this statute that governs Selective's ability to demand information from medical providers such as defendants, including the investigation of its suspicions of insurance fraud. As the Shaw court noted in construing Florida's parallel PIP statutory scheme:
The very reason for the existence of this statutory scheme is that the insurers have no right to obtain it otherwise from assignees like Shaw. The Legislature has established a scheme that strikes a balance, under court supervision, between the insurers' need for information and the burden on health care providers who accept insurance proceeds in lieu of requiring payment from the insured directly.
[Shaw, supra, 37 So.3d at 336.]
New Jersey's PIP statute, then, provides a limited discovery remedy, permitting disclosure only to the extent delineated in the statute. Bergen Ambulatory, supra, 410 N.J.Super. at 278, 982 A.2d 1. Nothing in this statute provides for disclosure of the broad range of materials Selective sought in its declaratory judgment action, namely corporate charters, partnership agreements, annual reports, shareholder agreements and lease agreements. None of the requested documents relates to the "history, condition, treatment, dates and costs of such treatment of the injured person," N.J.S.A. 39:6A-13(b), and thus Selective's discovery request falls far outside the limited reach of the PIP statute.
We reached the same conclusion in Bergen Ambulatory, supra. There, New Jersey *174 Manufacturers Insurance Company (NJM), a PIP automobile insurance carrier, suspected that Bergen Ambulatory Surgery Center (BASC) was charging it a much higher rate than other insurance companies. 410 N.J.Super. at 275-76, 982 A.2d 1. As such, NJM requested an "elaborate array of data," including BASC's payment history for similar services and various financial data. Ibid. We held that allowing such disclosures was "a far-reaching approach [and] is unavailable and inappropriate under N.J.S.A. 39:6A-13(g)." Id. at 277, 982 A.2d 1. We specifically found that:
There is nothing in N.J.S.A. 39:6A-13(g) that evinces a legislative preference for court intervention to provide the type of sprawling discovery NJM seeks here. . . . Even the statute's undefined reference to costs as being discoverable does no more than require disclosure of "costs of such treatment of the injured person." N.J.S.A. 39:6A-13(b). NJM interprets this provision to a greater degree than appropriate, suggesting that it is an invitation to essentially audit the books of BASC. . . . [T]he legislative reference to "costs" means what it says, and no more: during the claims review process, an insurer may obtain individualized data from the health service provider regarding the costs to provide services to its patient, which does not include payment information about other payors for similar services provided to other patients.
[Id. at 278, 982 A.2d 1.]
Here, of course, Selective's requested disclosures are far more extensive than NJM's and, therefore, farther removed from the narrow discovery confines of N.J.S.A. 39:6A-13. At least in Bergen Ambulatory, supra, the disclosures related to a term in the statute, "costs," despite being broader than its legislative meaning. In this case, however, the request for corporate structure, partnership and shareholder agreements, and other business materials of the medical providers does not even arguably fall within the generic scope of any statutory term.
Selective relies instead on Prudential Property & Casualty Co. v. Nardone, 332 N.J.Super. 126, 752 A.2d 859 (Law Div. 2000), and Selective Insurance Co. v. Medical Alliances, LLC, 362 N.J.Super. 392, 827 A.2d 1188 (Law Div.2003), but these cases explicitly recognized that the information sought to be compelleda physician's holdings in certain medical providers (Nardone) and the corporate structure of a medical provider (Medical Alliances) were not discoverable under N.J.S.A. 39:6A-13(g). Nardone, supra, 332 N.J.Super. at 136, 752 A.2d 859; Medical Alliances, LLC, supra, 362 N.J.Super. at 401, 827 A.2d 1188. Although the Law Division in each instance otherwise allowed such discovery, it did so during the discovery phase of a lawsuit instituted by the insurer against a medical provider for violations of specific statutes or regulations governing health care professionalsin the one instance, unlawful self-referrals, in violation of N.J.S.A. 45:9-22.5(a) (Nardone, supra, 332 N.J.Super. at 136, 752 A.2d 859) and, in the other, for operating without a valid license (Medical Alliances, supra, 362 N.J.Super. at 401, 827 A.2d 1188). Here, in marked contrast, Selective filed a declaratory judgment action simply to compel discovery, alleging no statutory or regulatory violation and making no claim for substantive relief therefrom.
Thus, while N.J.S.A. 39:6A-13(g) allows court intervention to engage in certain limited discovery, it provides no remedy to the insurer for the disclosure of materials not explicitly delineated therein. Obviously, if the Legislature had intended to allow for broader discovery of all suspected PIP *175 abuses, it would not have explicitly and specifically enumerated the types of information deemed disclosable. See Nardone, supra, 332 N.J.Super. at 136, 752 A.2d 859 (noting that N.J.S.A. 39:6A-13(g) is a limited discovery mechanism).

III.
Notwithstanding its unavailability under N.J.S.A. 39:6A-13(g), Selective nevertheless argues entitlement to the requested information under the umbrella of statutory schemes mandating that insurance carriers investigate putative fraud. Without a doubt, there is a strong public policy in New Jersey to curb and deter insurance fraud to reduce premiums. Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992); see also Elkins v. New Jersey Mfrs. Ins. Co., 244 N.J.Super. 695, 701, 583 A.2d 409 (App.Div.1990) (noting that unjustified medical expenses have the effect of subverting the purpose of the nofault statute). This concern with the potential for fraudulent claims has been embodied in legislation such as the Fair Automobile Insurance Reform Act of 1990 (FAIR), N.J.S.A. 17:33B-1 to -64, which requires insurers writing private passenger automobile insurance to develop and implement plans for protection against fraudulent insurance claims and practices, see, e.g., N.J.S.A. 17:33B-2h(8), 17:33B-46[6] the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, which includes a provision that individuals who submit inflated claims "must be uncovered and vigorously prosecuted," and requires "greater consolidation of agencies that were created to combat fraud as necessary to accomplish this purpose," ibid.; and, most apropos, the Insurance Fraud Prevention Act (IFPA or Act), N.J.S.A. 17:33A-1 to -30. Indeed, the IFPA's purpose is to:
confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims.
[N.J.S.A. 17:33A-2.]
To this end, in addition to civil actions initiated by the Commissioner of Banking and Insurance for violations of the Act, and criminal actions prosecuted by the Attorney General under applicable criminal law, N.J.S.A. 17:33A-5, IFPA creates a private cause of action under which insurers may sue medical providers in the Law Division to recover compensatory damages for violations of the Act and, where a pattern of violations has been proven, for treble damages. N.J.S.A. 17:33A-7(a) and (b).
Significant for present purposes, none of these statutory schemes designed to prevent insurance fraud expressly authorizes the compelled production of the type of extensive discovery sought here from defendant medical providers, much less in the context of a declaratory judgment action instituted exclusively for that purpose. As noted, discovery from medical providers outside the limited scope of N.J.S.A. 39:6A-13 has only been permitted in lawsuits instituted by insurers seeking to terminate PIP payments or to recover *176 compensatory damages that typically flow from violations by medical providers of statutes or regulations governing their profession. See, e.g., Nardone, supra, 332 N.J.Super. at 136, 752 A.2d 859. In Nardone, supra, for instance, the insurer's lawsuit alleged the defendant physician engaged in unlawful self-referrals in violation of the Codey Law, N.J.S.A. 45:9-22.5,[7] and sought the medical provider's employee and ownership records. 332 N.J.Super. at 129, 752 A.2d 859.
Conversely, Selective's declaratory judgment complaint fails to allege a violation of the Codey Law, or any other governing statute or regulation for that matter, from which damages to the insurer would typically flow. And unlike Medical Alliances, supra, where the insurer sought to enjoin arbitration proceedings and to recover treble damages, 362 N.J.Super. at 394, 827 A.2d 1188, Selective's action was not brought under the IFPA, which, as noted, specifically created a private cause of action for the insurer against an offending medical provider. N.J.S.A. 17:33A-7. In fact, Selective's complaint does not even allege a violation of the Codey Law, but merely a suspicion of unlawful self-referrals and kickbacks among defendants. Moreover, Selective has pled no specific facts in support of this possibility, which its sprawling discovery demand is designed to substantiate. Consequently, its complaint makes no claim for substantive remedial relief such as termination of PIP payments to defendants, enjoining arbitration, or recovery of compensatory damages, but rather only seeks to compel discovery beyond which it would be entitled through the arbitral process. N.J.S.A. 39:6A-13(b), (g). We find this approach not only subverts the established legislative mechanism for obtaining information from health care providers providing medical treatment to insureds, ibid., but also improperly circumvents clearly defined statutory remedies for claimed medical provider misconduct.
In conclusion, we find that the cooperation clause in Selective's insurance policy does not bind defendant assignees and therefore cannot be the basis for the broad discovery demand at issue here. Rather, plaintiff's entitlement to discovery from defendants is limited by N.J.S.A. 39:6A-13(g), which provides the exclusive mechanism for obtaining information from medical providers in the arbitral process. Outside that process, in an action filed pursuant to the IFPA for substantive remedial relief from claimed violations thereof, plaintiff would be bound by, and subject to, the ordinary rules of discovery governing civil actions in the Law Division, with their usual limitations as to relevance and protections against oppression and harassment. Selective's declaratory judgment action in this instance simply does not qualify as such. Having otherwise offered no sound basis in law in support of its discovery demand, we conclude plaintiff is not entitled to the materials sought.
Reversed.
NOTES
[1] Defendants, Hudson East Pain Management Osteopathic Medicine and Physical Therapy (Hudson East), Hudson Pain Management (Hudson Pain), Tower West Chiropractic, Giordano Chiropractic, and Essex Pain Management Group, P.C. (Essex Pain) provide pain management, physical therapy, chiropractic, and osteopathic services. Essex Surgery Center (Essex Surgery) provides ambulatory outpatient surgical care. Advanced Neurologic and Orthopedic Associates, L.L.C. (Advanced Neurologic) provides neurologic and orthopedic evaluations and treatments.
[2] Dr. Richard Lipsky is the corporate director of both Essex Surgery and Essex Pain, whose corporate headquarters are located at the same address. Essex Surgery is owned by ELR Realty, an entity owned by the Lipsky Family Trust, of which Rimma Lipsky, Dr. Lipsky's wife, is the trustee. Dr. Lipsky is also the registered agent and chief executive officer of Advanced Neurologic.
[3] Sente and Ferraro Chiropractic was originally named a defendant, but was dismissed from the complaint when it subsequently complied with plaintiff's discovery request.
[4] The discovery requested in the complaint is substantial, including but not limited to: (1) all corporate charters; (2) all articles of incorporation; (3) all partnership agreements; (4) all annual reports; (5) all shareholder agreements; (6) all state and federal tax documents; (7) all financial documents, including loan documents and financing statements; and (8) all lease agreements. Plaintiff also requested that defendants answer interrogatories on these and many other topics.
[5] Selective's insurance policy with its insureds provides:

PART EDUTIES AFTER AN ACCIDENT OR LOSS
B. A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
[6] See also Assembly Appropriations Committee Statement to Assembly Bill No. 1, 1990, later enacted as L. 1990, c. 8 (the FAIR act). Under N.J.S.A. 17:33B-46, every private passenger automobile insurer must file for approval by the Commissioner of Insurance its fraud prevention plan, implementation of which must be monitored by the Division of Insurance Fraud Protection. Jallah, supra, 256 N.J.Super. at 140, 606 A.2d 839.
[7] Recent amendments to the Codey Law, effective March 1, 2010, exempt self-referred procedures performed by licensed ambulatory surgery practitioners who personally perform the surgery that is the subject of the referral, disclose their financial interest in the self-referral, and make the referral in the best interests of the patient. N.J.S.A. 45:9-22.5(c).