752 A.2d 859 (2000)
332 N.J. Super. 126
The PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY OF NEW JERSEY, Plaintiff,
v.
Richard J. NARDONE, D.C., et al., Defendants.
Superior Court of New Jersey, Law Division, Morris County.
Decided March 20, 2000.
*860 Michael F. Midlige, Lebanon, for plaintiff (Victor A. Rotolo, attorney).
Mark A. Berman, Newark, for defendants, Richard J. Nardone, D.C. (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Lawrence S. Lustberg, of counsel).
VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).
This action comes before the court on plaintiff, Prudential Property and Casualty Insurance Company of New Jersey's ("PruPac") verified declaratory judgment complaint to declare that the defendants are not entitled to personal injury protection ("PIP") benefits. This court entered an order to show cause with temporary restraints staying forty-seven arbitrations filed by defendants Richard J. Nardone, D.C., Hermosa Medical Services, Inc. and Camino Rehabilitation, Inc. (collectively "Nardone").[1]
Nardone instituted these arbitrations before the American Arbitration Association ("AAA") seeking PIP benefits for chiropractic treatment and physical therapy services allegedly rendered and for supplying durable medical goods to 96 PruPac insureds.
During the preliminary investigation of these claims, PruPac requested discovery from Nardone. In the overwhelming majority of cases, Nardone failed to supply PruPac with ownership records, valid contemporaneous treatment notes, administrative protocol records, and electro-diagnostic testing "raw data" substantiating the efficacy of the alleged treatment for which benefits were sought. Further, PruPac's investigation revealed that Dr. Nardone's relationship with Hermosa Medical Services and Camino Rehabilitation appears to violate New Jersey's proscription against self-referrals. In addition, most of the documentation received from Camino Rehabilitation does not specify the type of treatment performed. The *861 purported treatment notes indicate that Camino Rehabilitation, purportedly owned by William Kundrat, D.C., performed physical therapy in Dr. Nardone's offices that may violate applicable New Jersey rules and regulations.
Accordingly, not only is the validity and actual rendition of these entities' purported treatment disputed, their corporate structure and compliance with applicable New Jersey regulations is questioned.
In a good faith effort to resolve these disputes, beginning June 16, 1999, PruPac scheduled the Examinations Under Oath ("EUO") of Dr. Nardone and Dr. Kundrat. On numerous occasions, Dr. Nardone and Dr. Kundrat failed to appear. In addition, Dr. Nardone has refused to provide PruPac with meaningful discovery for more than eighteen months.
Without obtaining this discovery concerning these issues, PruPac is unable to investigate these apparent improprieties to properly defend defendants' claims. Accordingly, on February 1, 2000, PruPac obtained an order to show cause from this court: (1) compelling discovery including, Dr. Nardone's and Dr. Kundrat's depositions; production of all treatment records including electro-diagnostic raw testing data; and complete ownership and incorporation documents; (2) staying all AAA proceedings involving Nardone pending the production of discovery; and (3) providing for the dismissal of all referenced Nardone arbitrations, upon PruPac's motion, if the requested discovery is not produced within thirty days. This court has been informed by the attorney for Dr. Nardone and Dr. Kundrat that they will not appear for depositions nor give discovery because it "improperly impinges on [their] constitutional right against self-incrimination,"[2] and the thirty days have expired.
On March 3, 2000, PruPac filed a 162page amended verified declaratory judgment complaint adding a claim for insurance fraud, pursuant to the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30, against Dr. Nardone, Hermosa Medical Services, Camino Rehabilitation and Elmora Family Chiropractic Center.

I.
Richard J. Nardone, D.C. is a chiropractor licensed by the State of New Jersey who maintains offices at 150 Main Street in Orange, New Jersey using the name "Richard J. Nardone, D.C.," and at 520 Westfield Avenue in Elizabeth, New Jersey using the name "Elmora Family Chiropractic Center."
Camino Rehabilitation, Inc. is a New Jersey corporation which maintains offices at 765 Mountain Avenue in Springfield, New Jersey. William Kundrat, D.C. of 2245 El Camino Real Suite C, in Oceanside, California is the president and sole director of Camino Rehabilitation, Inc.
Hermosa Medical Services, Inc., a New Jersey corporation whose registered address is 520 Westfield Avenue in Elizabeth, New Jersey, provides durable medical goods to Dr. Nardone's practices from his offices. The sole director is Yvette M. Giatan of 7829 Casaba Avenue in Canoga Park, California, who owns, possesses an interest or is otherwise linked to addresses at P.O. Box 1465, in Mountainside, New Jersey and 371 Coolidge Drive in Kenilworth, New Jersey. She is also linked to two addresses in Orange and Scotch Plains which Dr. Nardone owns or in which he has an interest.
Dr. Nardone allegedly performed chiropractic modalities to numerous PruPac insureds who claimed to have been injured in automobile accidents. The treatment allegedly rendered by Dr. Nardone at his offices in Orange and Elizabeth invariably *862 consists of chiropractic manipulation and traction. Dr. Nardone also periodically bills for hot and cold packs. Dr. Nardone's billing indicates treatment frequently is generally three times per week for approximately five months.
Dr. Nardone also allegedly performed one or more of the following diagnostic tests, in his office, to the vast majority of purported patients: surface spinal EMGs; Somatosensory Evoked Potentials (SSEP); Brain Stem Evoked Potentials (BSEP); Nerve Conduction Velocities (NCV); and Echograms of the head and neck, extremities, spinal canal and/or pelvic region.
As part of its contractually-authorized and statutorily-mandated investigation into the validity and compensability of Nardone's claims for benefits, on assignment from various PruPac insureds, PruPac requested information concerning treatment, testing, and medical regulation compliance from Dr. Nardone. Identical requests were made for records of Camino Rehabilitation and Hermosa Medical Services to evaluate the compensability of the services performed, compliance with medical regulations bearing on the rendition of services and apparent impermissible self-referral between Dr. Nardone and these entities. To date, PruPac made 131 requests to Dr. Nardone and/or Dr. Nardone's counsel for the above referenced discovery. On 104 instances Dr. Nardone responded with a standard letter purporting to enclose records and requesting a $25 fee for "additional" office notes and records. The letters in response by Dr. Nardone with his fee request did not, however, enclose any records whatsoever. Moreover, on fifty instances PruPac paid Dr. Nardone's requested fee for records, but it did not receive them. In only nineteen instances did PruPac receive a complete response from Dr. Nardone. The necessity of obtaining all requested records is highlighted by the analysis by David Glick, D.C. performed for PruPac on the nineteen complete sets of records received to date.
The limited discovery provided by the defendants raise serious questions regarding: (1) the validity of the treatment and testing rendered; (2) self-referral among the entities; and (3) compliance with applicable licensing and administrative regulations bearing upon the rendition of medical services. Defendants have offered no proof to dispel these concerns.

II.
Camino Rehabilitation has also not provided any ownership, licensing, supervisory information or valid contemporaneous treatment notes. It only provided a treatment schedule, purporting to be contemporaneous treatment notes.
The treatment modalities allegedly performed by Camino Rehabilitation constitute physical therapy as set forth in N.J.A.C. 13:39A-2.1, which states in relevant part:
"Physical therapy" includes administering physical therapy measures, activities, agents or devices, including, but not limited to, ...range or motion exercise; muscle and soft tissue stretching; muscle strengthening exercise; balance and coordination exercise....
Moreover, N.J.S.A. 45:9-37.19 limits the licensees who may render physical therapy. A chiropractor's license does not permit the performance of the physical therapy treatment allegedly rendered at Camino Rehabilitation. See N.J.A.C. 13:44E-1.1.
Under N.J.S.A. 45:9-14.5 the practice of chiropractic is defined as "[a] system of adjusting the articulations of the spinal column by manipulation thereof." Additionally, N.J.A.C. 13:44E-1.1(a) states in relevant part:
The practice of chiropractic is that patient health care discipline whose methodology is the adjustment and/or manipulation of the articulations of the spine and related structures.
*863 Dr. Kundrat allegedly performed physical therapy at Camino Rehabilitation. Therefore, Dr. Kundrat has unlawfully engaged in the practice of physical therapy, and no one is entitled to payment for said treatment.
"Kinetic activ rehab," "Strengthening/Rehabilitation," and "Kinetic Muscle Strengthening Exercise," the various names employed by Camino Rehabilitation for the services it allegedly provides to Dr. Nardone's patients are outside the scope of chiropractic practice. Clearly, these purported modalities are directed at muscle strengthening exercises and soft tissue stretching as defined in N.J.A.C. 13:39A-2.1, and not "articulations of the spine and related structures" under N.J.S.A. 45:9-14.5.
These activities are not adjustment or manipulation of articulations of the spine. Accordingly, since they are not within a chiropractor's scope of practice, Dr. Kundrat and Camino Rehabilitation cannot perform these activities, and are not entitled to payment for these services. Dr. Kundrat's billing for kinetic muscle strengthening exercises is not authorized by law and is therefore not compensable as a PIP benefit.

III.
In Thermographic Diagnostics v. Allstate Ins., Co., 125 N.J. 491, 593 A.2d 768 (1991), the Supreme Court of New Jersey held:
[A] necessary medical expense under the Act is one incurred for a treatment, procedure, or service ordered by a qualified physician based on the physician's objectively reasonable belief that it will further the patient's diagnosis and treatment. The use of the treatment, procedure, or service must be warranted by the circumstances and its medical value must be verified by credible and reliable evidence.

[Id. at 512, 593 A.2d 768 (Emphasis added).]
Therefore, in order for medical treatment to be compensable as a PIP benefit, it must be ordered based on the provider's objective belief it will further the patient's diagnosis and treatment. PruPac has shown, by its expert's reports, that the electro-diagnostic testing performed by Dr. Nardone has no medical value and cannot be verified by credible evidence.

IV.
New Jersey statutory law and administrative regulations unequivocally prohibit health care providers from referring patients to a health care service in which the practitioner or his immediate family has a significant beneficial interest.
On July 1, 1991, the New Jersey Legislature enacted the Health Care Cost Reduction Act ("Act"), L. 1991, c. 187, N.J.S.A. 26:2H-18.50. The Act imposed new restrictions on practitioner ownership of health care services and "self-interested" referrals. The section of the Act pertaining to self-referrals, codified in N.J.S.A. 45:9-22.5, states:
A practitioner shall not refer a patient or direct an employee of the practitioner to refer a patient to a health care service in which the practitioner, or the practitioner's immediate family, or the practitioner in combination with practitioner's immediate family has a significant beneficial interest....

[N.J.S.A. 45:9-22.5(a).]
Additionally, practitioner is defined as "a physician, chiropractor or podiatrist licensed pursuant to Title 45 of the Revised Statutes." N.J.S.A. 45:9-22.4.
The Act also directed the State Board of Medical Examiner to adopt rules to carry out the purposes of the Act. Accordingly, the Board adopted N.J.A.C. 13:35-6.17, which recites the statutory language above verbatim. The Board further defined "health care service" to include "a facility which provides radiologic or other diagnostic *864 imaging services, physical therapy, ambulatory surgery, or ophthalmic services."
"Significant beneficial interest" is defined as:
any financial interest including an equity or ownership interest in a practice or in a commercial entity holding itself out as offering health care service.
Further, a "financial interest":
[m]eans a monetary interest of any amount held by a practitioner personally or through immediate family ... in a health care service to which the practitioner's patients are referred.

[N.J.A.C. 13:35-6.17(a)(1).]
In promulgating this regulation, the Board of Medical Examiners stated that the regulation is intended to "prohibit[] indirect profits to the licensee based upon the fact of the referral." 23 N.J.R. 161(a) (January 22, 1991).
Our Executive Branch has also applied the proscription against self-referral to chiropractors. See N.J.A.C. 13:44E-3.9, where the Board of Chiropractic Examiners provides strict limitations on self-referrals. Although that regulation deals specifically with testing referrals, it is clear the Board of Chiropractic Examiners did not intend to limit the proscription against self-referral to diagnostic testing by chiropractors. To do so would promote the very evil the Legislature clearly prohibited by enacting N.J.S.A. 45:9-22.5.
Hermosa Medical Services, Inc. is a durable medical goods provider, supplying Transcutaneous Electrical Nerve Stimulation (TENS) units, electrodes, and batteries prescribed by Dr. Nardone, which are issued from Dr. Nardone's offices.
Dr. Nardone also owns, maintains an interest in, or is otherwise linked to addresses at P.O. Box 1465, Mountainside, New Jersey and 371 Coolidge Drive in Kenilworth, New Jersey. In addition to providing allegedly non-compensable treatment, the apparent links between Dr. Nardone, Hermosa Medical Services and Camino Rehabilitation raise serious questions as to the relationship, and potential selfreferral, among the alleged entities. Specifically, PruPac's investigation has revealed numerous address links between the officers/owners of these entities. These links span the entire continental United States and create, at least, the appearance that these principals/owners maintain property interests which violate New Jersey law concerning referral among health care providers.
These address links, in addition to the fact that Hermosa's durable medical goods are distributed exclusively at Dr. Nardone's offices, indicate a potential familial and/or financial relationship exists between Yvette M. Giatan and Dr. Nardone, which appear to violate New Jersey's proscription against self-referral.
Camino Rehabilitation's services are performed at Dr. Nardone's office by Dr. Nardone and/or his staff. All addresses linked to Dr. Kundrat are located in California. Nevertheless, physical therapy modalities are being performed at Dr. Nardone's office and billed under Camino Rehabilitation's name. The treatment performed by Dr. Nardone and/or his staff and billed under Camino Rehabilitation's name and Dr. Nardone's self-referral to Hermosa Medical Services and Camino Rehab appear to violate significant regulations bearing on the rendition of medical services.

V.
The New Jersey Legislature envisioned certain PIP disputes when it enacted the No-Fault Act, N.J.S.A. 39:6A-1 to -35, and provided limited discovery mechanisms. N.J.S.A. 39:6A-13(b). Specifically, the statute provides for limited written discovery such as production of records, reports and documents regarding the patients. Id. Nevertheless, these discovery mechanisms were not intended to be the exclusive method for obtaining relevant information in determining the compensability of a claim. The Legislature envisioned *865 the possible need for discovery not contemplated in the limited provisions of N.J.S.A. 39:6A-13(b). Specifically, when addressing the issue of PIP discovery, the Legislature also included N.J.S.A. 39:6A-13(g), which allows a party to seek judicial relief regarding PIP discovery disputes.
Additionally, the Appellate Division has held that a provider must comply with significant medical regulations bearing on the rendition of services to be eligible for PIP benefits. Allstate v. Orthopedic Evaluations, Inc., 300 N.J.Super. 510, 693 A.2d 500 (App.Div.1997); see also Prudential Property and Casualty Insurance Company v. Midlantic Motion X-Ray, Inc., 325 N.J.Super. 54, 737 A.2d 711 (Law Div. 1999).
PruPac has shown that Dr. Nardone, Dr. Kundrat, Camino Rehabilitation and Hermosa Medical Services have apparently violated significant medical regulations regarding self-referral and physical therapy treatment, and conducted electro-diagnostic testing which was not intended to aid treatment. However, the court does not have to determine this issue at this time because PruPac is obtaining relief based upon Nardone's failure to cooperate. See infra.

VI.
Since Dr. Nardone and others, by filing forty-seven complaints for arbitration with the AAA, are seeking payment of PIP benefits on assignment from PruPac's insureds, they are bound to the assignors' contract terms and must comply with the insurance policies' cooperation and EUO clauses. As such, Dr. Nardone, as well as all other assignees, must comply with the contractual EUO and cooperation clauses as a condition precedent to seeking benefits. Mariani v. Bender, 85 N.J.Super. 490, 500, 205 A.2d 323 (App.Div.1964).
As assignees of the allegedly treated parties, Dr. Nardone, Dr. Kundrat, Hermosa Medical Services and Camino Rehabilitation have no greater rights than the assignors. Allstate Ins., Co. v. Lopez, 325 N.J.Super. 268, 277, 738 A.2d 987 (Law Div.1999).
PruPac's contract, under which defendants seek PIP benefits, clearly requires a claimant's cooperation as a condition precedent to recovery of benefits. Specifically, the PruPac policy provides:
YOUR DUTIES AFTER AN ACCIDENT AND LOSS... Persons making a claim under this policy must:
.....
(2) Cooperate with us in investigating, settling, or defending any loss or suit. Cooperation includes attending hearings and trials, helping in suing others who are responsible for the accident, giving evidence, and helping us get witnesses to a trial....
.....
(7) Give us a Statement Under Oath within 30 days of our request.
"Cooperation and assistance of the insured [pursuant to the cooperation clause of the policy] requires a fair, frank, and truthful disclosure of information reasonably demanded by the insurer...." Pearl Assurance Co. v. Watts, 58 N.J.Super. 483, 491, 156 A.2d 725 (App.Div. 1959).
Furthermore, subject to ordinary standards of reasonableness and fairness, if a claimant does not cooperate with the policy EUO provisions, he or she is not entitled to PIP benefits. New Jersey Auto. Full Ins., Underwriting Assoc. v. Jallah, 256 N.J.Super. 134, 141, 606 A.2d 839 (App.Div.1992). Additionally, the Jallah court noted that an insurer is entitled to an EUO, even if it previously terminated benefits and arbitration has been demanded, and without even showing fraud. Id. at 141, 606 A.2d 839.
The defendants' refusal to give discovery obstructs PruPac's contractual right to the claimants' cooperation and violates the duty to aid in the investigation justifying PruPac's disclaimer of coverage.
*866 Clearly, PruPac has been prejudiced by Nardone's refusal to cooperate. Mere assertion of a Fifth Amendment privilege not to testify by a health care provider assignee of an insured is a violation of the duty to cooperate with the insurance company, thereby precluding him or her from recovering personal injury protection benefits from the insurance company. In addition, dilatory tactics of the assignee attempting to delay the investigation and/or resolution of the claim is also grounds to deny the claim.
One may not invoke the judicial process seeking affirmative relief and at the same time flout the duties imposed by that process to avoid development of proof having a bearing upon his or her right to such relief.

VII.
Therefore, the court dismisses with prejudice Nardone's forty-seven AAA complaints, and all of defendants, Richard J. Nardone, D.C., Camino Rehabilitation, Inc., Elmora Family Chiropractic Center, Hermosa Medical Services, Inc., and William Kundrat, D.C.'s claims for first-party personal injury protection (PIP) benefits, on assignment of PruPac's insureds, are denied and dismissed with prejudice.
Furthermore, defendants Richard Nardone, D.C., Camino Rehabilitation, Inc., Elmora Family Chiropractic Center, Hermosa Medical Services, Inc., and William Kundrat, D.C. are hereby permanently enjoined from filing any new arbitration demands with the American Arbitration Association for benefits allegedly outstanding to them.
NOTES
[1] PruPac's complaint embodies two counts: Count I concerns Nardone's discovery deficiencies and alleged potential impermissible self-referrals. Count II concerns various insureds' failure to cooperate.
[2] While PruPac's discovery efforts were ongoing, the New Jersey Attorney General's Office, Division of Criminal Justice, executed search warrants and seized Dr. Nardone's treatment records, as well as the billing records of Donna Januit, Dr. Nardone's collection clerk.