46 A.3d 1272

SELECTIVE INSURANCE COMPANY OF AMERICA, SELECTIVE WAY INSURANCE COMPANY, SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, SELECTIVE INSURANCE COMPANY OF THE SOUTH EAST, SELECTIVE INSURANCE COMPANY OF NEW YORK, AND SELECTIVE AUTO INSURANCE COMPANY OF NEW JERSEY, PLAINTIFFS–APPELLANTS, v. HUDSON EAST PAIN MANAGEMENT OSTEOPATHIC MEDICINE AND PHYSICAL THERAPY, ESSEX SURGERY CENTER L.L.C., ESSEX PAIN MANAGEMENT, TOWER WEST CHIROPRACTIC, GIORDANO CHIROPRACTIC, AND ADVANCED NEUROLOGICAL ORTHOPEDIC ASSOCIATES, DEFENDANTS–RESPONDENTS AND SENTE AND FERRARO CHIROPRACTIC, DEFENDANT.

Argued March 1, 2012—Decided July 18, 2012.

598

*Gordon S. Graber* argued the cause for appellants (*Sullivan and Graber,* attorneys; *Mr. Graber* and *Chryzanta K. Hentisz,* on the briefs).

*Charles X. Gormally* argued the cause for respondents (*Brach Eichler,* attorneys; *Mr. Gormally* and *Sean A. Smith,* on the briefs).

*Kenneth E. Pringle* submitted a brief on behalf of amici curiae Insurance Council of New Jersey and Property Casualty Insurers Association of America (*Pringle Quinn Anzano,* attorneys).

Judge WEFING (temporarily assigned) delivered the opinion of the Court.

This appeal presents a discrete, narrow legal question: is a health care provider who has received an assignment of personal injury protection (PIP) benefits from an insured obligated upon request to furnish to the insurer broad information with respect to the provider's ownership structure, billing practices, and regulatory compliance? The trial court held that the provider was obligated, but the Appellate Division reversed. *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt.,* 416 *N.J.Super.* 418, 421, 5 *A.*3d 166 (App.Div.2010). We granted plaintiff's petition for certification to consider whether this determination was correct.[1] *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt.,* 206 *N.J.* 64, 17 *A.*3d 1245 (2011). We also granted the motion of Insurance Council of New Jersey and Property Casualty Insurers Association of America to appear as amici curiae. We affirm, but for reasons other than those stated by the Appellate Division.

---

[1] The complaint lists six named plaintiffs. For ease of understanding, we shall refer to "plaintiff" in the singular or to "Selective."

## I.

Because this matter arose when defendants filed a motion under *Rule* 4:6–2(e) to dismiss plaintiff's complaint, the record before us is not voluminous. It consists of plaintiff's verified complaint and the pleadings and documents submitted to the trial court in connection with defendants' motion. According to that record, individuals insured by Selective sought medical treatment from defendants for injuries received in automobile accidents. Those insureds assigned to defendants the benefits to which they were entitled under their PIP coverage, giving defendants the contractual right to seek PIP reimbursement under those policies. Defendants, on the basis of those assignments, submitted claims for payment to Selective for the services they had provided to Selective's insureds.

In reviewing the claims submitted, Selective detected what it considered to be suspicious patterns in both the treatments defendants had provided and the corporate links among the treating entities. Wanting to pursue the questions generated by those perceived patterns, Selective requested that defendants supply to it a variety of data with respect to their ownership structure, billing practices, and compliance with certain regulations. In support of its request, Selective cited the provision within the insureds' insurance policies requiring the insureds to cooperate with Selective in the investigation of any claim under the policy. When defendants did not agree to supply the material Selective sought, Selective filed a verified complaint in which it alleged that defendants' failure to supply the information was a breach of the duty to cooperate and a violation of the PIP discovery statute, *N.J.S.A.* 39:6A–13(b). Selective sought a declaratory judgment that defendants were obligated to provide the information and documents it sought and that if they failed to do so, they would be ineligible to receive PIP reimbursement. Selective attached to its complaint a "Demand for Discovery" that included a set of interrogatories and a notice to produce documents.

After hearing oral argument, the trial court denied defendants' motion to dismiss and granted Selective the relief it had requested by directing defendants to respond to Selective's discovery requests. In the course of its oral opinion, the trial court referred to New Jersey as "the insurance fraud capital of the world." It stated:

> I'm satisfied that ... Selective Insurance Company ... has a ... sufficient articulable predicate for requesting this information from the various defendants who are named.

> I'm satisfied that a review of the billing information submitted raises questions concerning the use of the [tax identification number], whether it's inadvertent or otherwise ... in the case of multiple billing entities, which raises the specter of some type of ... conduct warranting further investigation.... It may very well ... fall short of actionable fraud, but the public policy of the State requires that insurance companies investigate and take steps to try to prevent fraud at the earliest opportunity.

Defendants thereafter moved for reconsideration, but the trial court denied that motion, together with defendants' request for a stay.

Defendants appealed to the Appellate Division, and that court granted a stay of the trial court's order pending resolution of the appeal. *Selective Ins., supra,* 416 *N.J.Super.* at 425, 5 *A.*3d 166. In its published opinion, the Appellate Division concluded that Selective was not entitled to the discovery it sought. *Ibid.* The panel set forth three grounds in support of its decision. First, it determined that Selective's reliance on the cooperation clause in its policies was unavailing. *Id.* at 425–29, 5 *A.*3d 166. It also analyzed *N.J.S.A.* 39:6A–13, which sets forth the statutory framework for discovery of facts with respect to PIP coverage, and held that Selective's discovery demands sought information far beyond what was statutorily authorized. *Id.* at 429–32, 5 *A.*3d 166. Finally, while acknowledging the State's strong interest in combating insurance fraud, the Appellate Division panel held that Selective could not seek the information through the vehicle of a declaratory judgment complaint, which sought no substantive relief other than discovery. *Id.* at 433–35, 5 *A.*3d 166.

## II.

Before this Court, Selective restates the arguments it presented to the Appellate Division. It contends that defendants, who are relying on assignments of benefits executed by policyholders, are bound to the terms of the policies under which they are seeking payment. Selective argues that the Appellate Division erroneously concluded that Selective was restricted under *N.J.S.A.* 39:6A–13 to obtaining no more than the records of the patients that the providers treated. Further, it asserts that it can demand the material it sought even in the absence of filing a complaint alleging fraudulent conduct. It points to earlier decisions in the Law Division that permitted a PIP insurer to seek such information from medical providers. *See generally, Selective Ins. Co. of Am. v. Med. Alliances, LLC,* 362 *N.J.Super.* 392, 827 *A.*2d 1188 (Law Div.2003); *Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone,* 332 *N.J.Super.* 126, 752 *A.*2d 859 (Law Div.2000).

Defendants counter those arguments by asserting that the appellate panel correctly declined to permit assignments of benefits to be used as a vehicle to subject medical providers to an insurer's expansive discovery demands. They argue that Selective is seeking to circumvent the discovery framework provided by the PIP statute. They point out that in the two cases upon which Selective relies, the complaints filed by the carriers requested substantive relief as well as discovery. They contend that those cases are distinguishable on that basis and do not support the legal method Selective adopted here.

Amici urge that we reverse the decision of the Appellate Division in this matter. According to amici, that decision places significant hurdles on the ability of insurers to detect and root out improper billing practices and insurance fraud. They stress that the insurance industry has, for many years, relied on a policy's cooperation clause to obtain data from medical providers as a check on improper practices. Amici assert that if insurers are not able to require providers to supply that information, they will be

unable to seek relief under the Insurance Fraud Prevention Act, *N.J.S.A.* 17:33A–1 to –30.

Defendants respond to amici's arguments by restating their view that the cooperation clause in an insurance policy does not obligate the assignee to comply with a carrier's discovery demands. Further, they maintain that even without the broad discovery demands Selective served in this matter, insurers have multiple avenues to pursue to protect against potential fraudulent claims.

### III.

■ We turn first to the standard that governs our review of this matter, an issue upon which the parties do not agree. Selective contends that the decision of the trial court should be reviewed to determine whether it abused its discretion when it ordered defendants to supply the requested discovery. That standard, Selective points out, is the usual measure applied to a trial court's disposition of discovery matters. *Bender v. Adelson,* 187 *N.J.* 411, 428, 901 *A.*2d 907 (2006) (finding no abuse of discretion in trial court's refusal to permit amendment of interrogatory answers and extension of discovery); *Payton v. N.J. Tpk. Auth.,* 148 *N.J.* 524, 559, 691 *A.*2d 321 (1997) (noting that appellate courts "normally defer to a trial court's disposition of discovery matters"). Defendants, on the other hand, assert that the question presented is one of law and that our review is, as a result, de novo and plenary. *Manalapan Realty, L.P. v. Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

We are satisfied that defendants' analysis of the standard of review is correct. Although facially the order entered by the trial court granted discovery relief to Selective, that is not a sufficient basis to characterize the order as a discretionary discovery order, which is subject to a deferential standard of review. *See Payton, supra,* 148 *N.J.* at 559, 691 *A.*2d 321 (stating that deference with

regard to discovery matters "is inappropriate if the court's determination . . . is based on a mistaken understanding of the applicable law").

■ This matter calls for us to interpret the language in an insurance policy issued by plaintiff. An insurance policy is a form of contract, *Doto v. Russo*, 140 *N.J.* 544, 555, 659 *A.*2d 1371 (1995), and the interpretation of contract language is a question of law. *Kieffer v. Best Buy*, 205 *N.J.* 213, 222–23, 14 *A.*3d 737 (2011) (citing *Jennings v. Pinto*, 5 *N.J.* 562, 569–70, 76 *A.*2d 669 (1950)). *See also Sierfeld v. Sierfeld*, 414 *N.J.Super.* 85, 94–95, 997 *A.*2d 1028 (App.Div.2010) (noting that interpretation of insurance contract is question of law); *Sealed Air Corp. v. Royal Indem. Co.*, 404 *N.J.Super.* 363, 375, 961 *A.*2d 1195 (App.Div.), *certif. denied*, 196 *N.J.* 601, 960 *A.*2d 396 (2008); *Adron, Inc. v. Home Ins. Co.*, 292 *N.J.Super.* 463, 473, 679 *A.*2d 160 (App.Div.1996) (noting that interpretation of insurance contract is question of law that may be determined on summary judgment). Further, to the extent that the parties' competing claims require that we construe certain statutory provisions as well, the same de novo standard of review applies. *Zabilowicz v. Kelsey*, 200 *N.J.* 507, 512–13, 984 *A.*2d 872 (2009).

■ We note for the sake of completeness that certain general principles guide us as we consider the proper interpretation to be given to the policy language at issue. That is, coverage provisions are to be read broadly, exclusions are to be read narrowly, potential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that fulfills the insured's reasonable expectations. *See Flomerfelt v. Cardiello*, 202 *N.J.* 432, 442, 997 *A.*2d 991 (2010); *Villa v. Short*, 195 *N.J.* 15, 23–24, 947 *A.*2d 1217 (2008); *Longobardi v. Chubb Ins. Co. of N.J.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990).

## IV.

■ We turn next to an examination of the cooperation clause contained in Selective's policies and set forth the relevant language.

PART E—DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

. . . .

B.  A person seeking any coverage must:

  1.  Cooperate with us in the investigation, settlement or defense of any claim or suit.

The Appellate Division panel relied on the general principle that there is a legally significant distinction between an assignment, which conveys benefits or the potential to receive benefits, and a delegation, which conveys duties or obligations. *Selective Ins.,* *supra,* 416 *N.J.Super.* at 426, 5 *A.*3d 166 (citing 9 *Corbin on Contracts* §§ 47.1, 47.6 (John E. Murray, Jr. ed.2007)). The panel noted that a Florida court had applied that principle in the context of an assignment of PIP benefits to a health care provider. *Id.* at 426–28, 5 *A.*3d 166 (citing *Shaw v. State Farm Fire & Cas. Co.,* 37 *So.*3d 329 (Fla.Dist.Ct.App.2010)). The panel reasoned from the principle that an assignee cannot be held responsible for performing the duties of his assignor unless "the assignee expressly assents to assume the duty or was a party to the original agreement." *Id.* at 426, 5 *A.*3d 166. It noted that defendants were not parties to the original insuring agreement and that there was no evidence they had agreed to assume any obligations under the policy. *Ibid.*

The principle that an assignment of benefits does not carry with it the corresponding duties of the assignor is not universal in its application. The *Restatement (Second) of Contracts* (1979) states, for example:

(1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

(2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

[*Id.* at § 328.]

In other statutory contexts, the Legislature has incorporated the views expressed in the *Restatement.* *See, e.g., N.J.S.A.* 12A:2-210(4).

The record that is before us does not contain the executed assignments upon which Selective relies and is barren with respect to the circumstances under which a particular assignment was executed. We are thus unable to conclude whether the views expressed in *Corbin* or those expressed in the *Restatement* should determine the parameters of the parties' relation to one another in light of defendant's status as an assignee. Further, we do not find it necessary to decide whether we agree with the views expressed by the majority members of the Florida appellate panel in *Shaw, supra,* when they decided that an assignee was not subject to the assignor's duty to submit to an examination under oath. 37 *So.*3d at 334.

We are satisfied that the result reached in this matter by the Appellate Division with respect to the proper construction of the cooperation clause should be affirmed. It is fundamental that the rights of an assignee can rise no higher than the rights of the assignor. *Mayo v. City Nat'l Bank & Trust Co.,* 56 *N.J.* 111, 117, 265 *A.*2d 382 (1970); *Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co.,* 320 *N.J.Super.* 546, 554, 727 *A.*2d 1050 (App.Div. 1999). If an assignee can have no greater rights than his assignor, it must follow that an assignee can have no greater duties than his assignor.

Here, an insured's duty to cooperate with Selective referred to the duty to cooperate with the "investigation, settlement or defenses" of the insured's underlying claim. An insured had no duty to provide information to Selective with respect to the ownership structure, billing practices, or referral methods of the medical providers from whom he or she sought treatment for his or her injuries. Because an insured had no obligation to supply that information to Selective, the assignment of benefits executed by an insured could not serve to impose that duty on the providers.

## V.

■ The second argument put forth by Selective is that the Appellate Division erred when it held that Selective's discovery demands "contravene[ ] New Jersey's comprehensive PIP statutory scheme." *Selective Ins., supra,* 416 *N.J.Super.* at 429, 5 *A.*3d 166. We reject that argument.

The Legislature, in adopting *N.J.S.A.* 39:6A–13, set down clear directives with respect to discovery in connection with PIP benefits. Under subsection (b) of the statute, health care providers, such as defendants, "shall, if requested to do so by the insurer . . . furnish forthwith a written report of the history, condition, treatment, dates and costs of such treatment of the injured person, and produce forthwith and permit the inspection and copying of his or its records regarding such history, condition, treatment, dates and costs of treatment." *N.J.S.A.* 39:6A–13(b). Further, subsection (g) of the statute creates a mechanism to resolve any disputes that may develop regarding an insurer's right to discovery about the patient's "history, condition, treatment, dates and costs of such treatment." *N.J.S.A.* 39:6A–13(g).

We can perceive no ambiguity in the statute's language, and our obligation is thus to apply the statute as the Legislature wrote it. *Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities,* 207 *N.J.* 489, 502, 25 *A.*3d 1063 (2011) ("If the statute's plain language reveals the Legislature's intent, we need proceed no further."); *Perrelli v. Pastorelle,* 206 *N.J.* 193, 200, 20 *A.*3d 354 (2011) ("Courts are cautioned against 'rewrit[ing] a plainly-written enactment of the Legislature or presum[ing] that the Legislature intended something other than that expressed by way of the plain language.' " (quoting *Hardy v. Abdul–Matin,* 198 *N.J.* 95, 101, 965 *A.*2d 1165 (2009))); *Foster v. Newark Hous. Auth.,* 389 *N.J.Super.* 60, 68, 911 *A.*2d 82 (App.Div.2006). Applying *N.J.S.A.* 39:6A–13 according to its clear terms does not lead to an absurd result, nor does it hinder the statute's purpose. *See Perrelli, supra,* 206 *N.J.* at 200–01, 20 *A.*3d 354 (holding that if literal reading of statute would lead to absurd result, or a result not consonant with

statute's overall purpose, literalism will give way so as to effectuate statute's purpose). The material sought by Selective in this matter far exceeds the statutory limitations of a patient's "history, condition, treatment, dates and cost of such treatment." *N.J.S.A.* 39:6A–13(g). We may not, under the guise of statutory construction, expand its scope in the boundless fashion plaintiff seeks merely because plaintiff has formed the belief that defendants may not have complied with the requirements of other statutes or regulations.

The goal of PIP is to provide prompt medical treatment for those who have been injured in automobile accidents without having that treatment delayed because of payment disputes. We recognize that Selective asserts that it has paid all the statements submitted to it and has not sought to deny treatment to any patients. We decline, however, to interpret this discovery statute in such a manner as to create a possibility that future patients might be subjected to such delay. The Legislature set clear parameters on the scope of permissible PIP discovery under *N.J.S.A.* 39:6A–13. We are not free to disregard the framework it put in place.

## VI.

Selective's final argument rests on New Jersey's strong public policy against insurance fraud. We have noted that insurance fraud in this State is "a problem of massive proportions." *Merin v. Maglaki*, 126 *N.J.* 430, 436, 599 *A.*2d 1256 (1992). The Federal Bureau of Investigation estimates that insurance fraud costs the average American family approximately $400 to $700 per year in increased premiums. FBI, *Insurance Fraud*, http://www.fbi.gov/stats-services/publications/insurance-fraud (last visited Apr. 27, 2012).

In an effort to protect the public from insurance fraud, New Jersey has adopted both statutory and regulatory structures. The Legislature passed the Insurance Fraud Prevention Act, *N.J.S.A.* 17:33A–1 to –30, which created the Office of the Insurance Fraud

Prosecutor, *N.J.S.A.* 17:33A–16, and the Bureau of Fraud Deterrence, *N.J.S.A.* 17:33A–8(a)(1). Defendants contend that the statute thus places responsibility for the detection and prevention of insurance fraud on the Attorney General and the Department of Banking and Insurance, not on private entities such as Selective.

That statute, however, does impose affirmative duties on insurers with respect to insurance fraud. It requires, for instance, that all automobile insurers such as Selective prepare and file with the Commissioner of Banking and Insurance a plan to detect and prevent fraudulent claims. *N.J.S.A.* 17:33A–15(a). Further, each insurer must annually file with the Director of the Division of Insurance Fraud Prevention a report on its "experience in implementing its fraud prevention plan." *N.J.S.A.* 17:33A–15(b). An insurer that does not comply with the filing requirements is subject to a penalty of up to $25,000 per violation. *N.J.S.A.* 17:33A–15(c). Additionally, by regulation, every automobile insurer that insures more than 2500 vehicles in New Jersey must include as part of its plan to prevent and detect insurance fraud a Special Investigations Unit. *N.J.A.C.* 11:16–6.4(a). Among the duties of the Special Investigations Unit is "[i]dentifying persons and organizations that are involved in suspicious claim activity." *N.J.A.C.* 11:16–6.4(a), (b)(6).

Another portion of the statute directs the Insurance Fraud Prosecutor to maintain an insurance fraud data base and specifies that the data base is to include "referrals, reports of fraud investigations, prosecution, or litigation, and the results of such proceedings." *N.J.S.A.* 17:33A–22(a). Subsection (b) provides:

> The Insurance Fraud Prosecutor shall provide for the reporting of claims information ... in a standard reporting form, which shall include, but shall not be limited to ... information on automobile accidents, including date and location of accidents, persons involved in accidents, the kinds of injuries sustained in accidents and treating health care providers, for the purpose of identifying patterns of possible fraudulent activity.... Every insurer shall submit the data required by the Insurance Fraud Prosecutor for all claims closing with payment during a period established by the Insurance Fraud Prosecutor.

[*N.J.S.A.* 17:33A–22(b).]

Selective contends that those provisions, together with statutory restrictions on the ability of health care providers to refer a patient for treatment to a facility in which the provider or a member of his immediate family has a significant beneficial interest, *N.J.S.A.* 45:9–22.5, justify its request for the detailed information it sought from defendants. It points to cases such as *Medical Alliances* and *Nardone* as examples of the use of discovery as a tool against insurance fraud.

In the posture in which this matter has reached us, we are not persuaded. When Selective filed its complaint, it articulated the legal theories under which it was proceeding: that defendants were obligated to respond to Selective's discovery demands under both the cooperation clause and the PIP discovery statute. We have already set forth earlier in this opinion our reasons for concluding that neither supports Selective's position. Selective made no attempt to amend its complaint to set forth any alternative bases. Defendants were entitled to respond to the legal theories Selective had chosen to pursue, and the Appellate Division correctly analyzed the legal strengths and weaknesses of Selective's position on the basis of those legal theories.

Nor are we persuaded by earlier, apparently successful efforts to obtain discovery in other matters, such as in *Medical Alliances* and *Nardone*. Without suggesting either approval or disapproval of those opinions, we note that the complaints filed in those matters sought more than mere discovery. In *Nardone, supra,* for example, the plaintiff sought to restrain PIP arbitrations that had been scheduled, in addition to relief under the Insurance Fraud Prevention Act. 332 *N.J.Super.* at 128–30, 752 *A.*2d 859. In *Medical Alliances, supra,* the plaintiff also sought to enjoin arbitration proceedings, a declaratory judgment under the Insurance Fraud Protection Act, and treble damages. 362 *N.J.Super.* at 394, 827 *A.*2d 1188. Nor is there any indication that the defendants in those matters raised the challenges that these defendants have asserted.

We stress the limited nature of our holding in this matter. We are not to be understood as sanctioning attempts to hamper legitimate efforts to root out instances of fraudulent conduct. Nor should we be understood as restricting insurers' reasonable attempts to comply with their statutory obligations. We have done no more than address this issue within the framework plaintiff selected.

## VII.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judge WEFING (temporarily assigned)—6.