NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2833-14T4

ROB K. CONSTRUCTION
& COMPANY,

 Plaintiff-Appellant,

v.

RUTGERS CASUALTY INSURANCE
COMPANY, and AMERICAN
EUROPEAN INSURANCE GROUP, INC.,

 Defendants-Respondents,

and

MERCHANTS INSURANCE GROUP,
RUTGERS ENHANCED INSURANCE
COMPANY, and UNITED INTERNATIONAL
INSURANCE COMPANY,

 Defendants.

________________________________________________________________

 Argued January 10, 2017 – Decided June 27, 2017

 Before Judges Reisner and Rothstadt.

 On appeal from the Superior Court of New
 Jersey, Law Division, Hudson County, Docket
 No. L-5506-12.

 Louis J. Santore argued the cause for
 appellant.
 Robert M. Brigantic argued the cause for
 respondents (Lebowitz, Oleske, Connahan &
 Kassar, LLC, attorneys; Mr. Brigantic, on the
 brief).

PER CURIAM

 Plaintiff Rob K. Construction & Co., a general contractor,

appeals from a trial judge's involuntary dismissal of its complaint

at the end of plaintiff's case, R. 4:37-2(b). Plaintiff's

complaint alleged that defendant American European Insurance Group

(AEIG), through its related entity defendant Rutgers Casualty

Insurance Company (Rutgers), wrongfully denied coverage for a

claim made by an employee of one of plaintiff's subcontractors.

 The claim arose when the employee was injured at a job site

that was under plaintiff's supervision. Plaintiff alleged the

claim was covered by the commercial general liability policy

defendants issued to plaintiff. The trial judge, relying upon the

policy's express language and representations made by plaintiff

in its application for insurance, determined that defendants

properly denied coverage. On appeal, plaintiff argues that the

judge ignored plaintiff's reasonable expectation of coverage, as

established by the evidence presented to the jury, and failed to

strictly construe the policy's exclusion of coverage for injuries

to contractors and employees of contractors. We disagree and

affirm.

 2 A-2833-14T4
 The facts adduced at trial by plaintiff are summarized as

follows. Plaintiff was formed in 2004 by its principal, Robert

Krakowiak,1 an assistant portfolio manager at a financial

institution, to perform maintenance on portfolio properties held

by a coworker. During the ensuing years, the nature of plaintiff's

business expanded to include home renovations and, ultimately, new

construction. Beginning in 2008, plaintiff started to build homes

in New York "worth more than $500,000." Plaintiff served as the

general contractor for these new construction projects, working

with clients to develop the architectural plan and hiring

subcontractors to perform the work.

 Plaintiff applied for general liability insurance in early

2006 and represented to its agent and defendants that plaintiff

had one employee, did not hire subcontractors, and only performed

remodeling work as compared to structural work. Krakowiak

understood that this information impacted the type of coverage

plaintiff required. Based on that information, Rutgers issued a

general liability policy to plaintiff. The premium for the policy

at the time of the subject claim was $1,352.00. According to a

representative from AEIG, had plaintiff purchased insurance

1
 Krakowiak holds a bachelor's degree in biochemistry from
Syracuse University, but was exposed to the construction trade by
his father who was builder.

 3 A-2833-14T4
coverage for general contractors the premium would be "at least

tenfold" more expensive.

 Plaintiff renewed the policy from year to year without ever

informing defendants of any change in plaintiff's operations. For

example, on March 4, 2009, plaintiff submitted a policy holder

report to defendants that stated plaintiff was engaged in interior

remodeling, with annual sales of $30,000, which Krakowiak

acknowledged was "a grossly under-estimated statement of . . . net

sales."

 The policy that defendants issued each year contained an

exclusion entitled "Exclusion of Injury to Employees, Contractors

and Employees of Contractors." The exclusion provided:

 This insurance does not apply to:

 . . . .

 II. "bodily injury" to any contractor or any
 "employee" of any contractor arising out of
 or in the course of the rendering or
 performing services of any kind or nature
 whatsoever by such contractor or "employee"
 of such contractor for which any insured may
 become liable in any capacity[.]

 Krakowiak testified at trial that he understood a claim made

by an injured employee of a subcontractor would be excluded from

coverage, although he admitted that he did not read the policy

"carefully enough."

 4 A-2833-14T4
 The underlying claim occurred in June 2011, when an employee

of plaintiff's plumbing sub-contractor was allegedly injured at

one of plaintiff's job sites. The injured worker sued plaintiff

in New York. Plaintiff gave notice of the claim to defendants,

who denied coverage, citing, among other bases, the exclusion for

employees of contractors cited above. Defendants' denial of

coverage resulted in plaintiff filing the complaint in this matter.

 Plaintiff's complaint was tried before a jury and presided

over by Judge Francis B. Schultz. At the end of the plaintiff's

case, defendants moved for dismissal. Plaintiff opposed the

motion, arguing that the evidence established that it had a

reasonable expectation of coverage.

 Judge Schultz granted the motion and placed his reasons on

the record. The judge began by setting forth the standard for

determining a motion to dismiss pursuant to Rule 4:37-2(b),

including the requirement that all favorable inferences be

afforded to the nonmoving party. The judge rejected plaintiff's

contention that it had a reasonable expectation of coverage, as

Krakowiak did not read the policy, nor offer any proof that

"anything in the policy caused him to believe he had coverage for

bodily injury claims made by [a subcontractor's] employees at the

work site," or that defendants had led him to believe as much.

The judge also pointed out that plaintiff never advised defendants

 5 A-2833-14T4
that it was operating a business that included the participation

of subcontractors and their employees. Rather, the application

supported the conclusion that Krakowiak "was [running] a one man

operation." The judge stated:

 Had the plaintiff submitted an application,
 indicating that [it] had some contractors
 that[, it] was doing structural work, that
 [it] had gross sales of between 500,000 and a
 million, if each house sold for half a
 million[,] and [it] did one or two a year[;]
 had [plaintiff] put in there that [it] had
 gross sales of half a million to a million
 that [it] was using subcontractors, then the
 plaintiff could maintain an argument to the
 effect of well, I told the insurance company.
 I told the [broker], . . . who forwarded it
 on to the insurance company, that I was
 building houses for half a million dollars.
 That I had other people on the job site.

 And[,] therefore, I was entitled to reasonably
 expect that the policy would cover me for
 that. But [it] doesn't. Plaintiff does not
 contend that any applications were given other
 than the ones I just read. [Plaintiff]
 doesn't say that[,] wait a minute, I sent
 something to the insurance company telling
 them what kind of work I was actually doing.
 No.

 So based on the applications that the
 plaintiff sent in where [it] denied having any
 subcontractors[ and stated its] gross sales
 were $30,000[, t]here's nothing inconsistent.
 There's nothing even in the application that
 would entitle the plaintiff to say [its]
 reasonable expectations were not fulfilled by
 the exclusion. The exclusion was consistent
 with [its] own application. I should also
 point out that the independent producer . . .
 knew that Rutgers would not cover the

 6 A-2833-14T4
 plaintiff if he had workers on the job site[,]
 and they wouldn't have placed it with Rutgers.

 Judge Schultz also noted that the premium plaintiff paid was

for a "bare bones" policy that was consistent with plaintiff's

application, so that it too could not have given rise to any

"reasonable expectation" of coverage for the claim.

 The judge concluded by stating:

 Looking at that exclusion, I can say that
 every single word in the exclusion is and can
 be understood by anyone picking up this
 document and being able to read it. Simply
 put, there was no coverage for injuries
 sustained by a worker on the job site.

 . . . .

 [Therefore], there is nothing to go to a jury.
 So the plaintiff's case is dismissed in its
 entirety.

 On appeal, plaintiff contends that the judge misapplied the

standard for consideration of a motion filed pursuant to Rule

4:37-2(b) and that he failed to strictly construe the disputed

exclusion against defendants.2

 In our review of a trial judge's grant of a motion for an

involuntary dismissal at the end of plaintiff's case, R. 4:37-

2(b), we apply the same standard as the trial court. ADS Assocs.

2
 Plaintiff also argues it was entitled to a jury trial to
resolve its dispute. We are somewhat bewildered by this argument
since the matter was indeed brought before a jury for trial. For
this reason, we do not consider plaintiff's argument.

 7 A-2833-14T4
Grp. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014). A motion for

involuntary dismissal is premised "on the ground that upon the

facts and upon the law the [non-moving party] has shown no right

to relief." R. 4:37-2(b). The motion shall be denied if "'the

evidence, together with the legitimate inferences therefrom, could

sustain a judgment in favor' of the party opposing the motion."

Dolson v. Anastasia, 55 N.J. 2, 5 (1969) (quoting R. 4:37-2(b)).

If a court, "'accepting as true all the evidence which supports

the position of the party defending against the motion and

according him the benefit of all inferences which can reasonably

and legitimately be deduced therefrom,' finds that 'reasonable

minds could differ,' then 'the motion must be denied.'" ADS

Assocs. Grp., supra, 219 N.J. at 510-11 (quoting Verdicchio v.

Ricca, 179 N.J. 1, 30 (2004)). Under this standard, we "must

examine the evidence, together with legitimate inferences which

can be drawn therefrom, and determine whether the evidence could

have sustained a judgment in favor of the party who opposed the

motion." Craggan v. IKEA USA, 332 N.J. Super. 53, 61 (App. Div.

2000) (quoting Tannock v. N.J. Bell Tel., 223 N.J. Super. 1, 6

(App. Div. 1988)).

 Applying this standard, we find plaintiff's arguments to be

without sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the

 8 A-2833-14T4
reasons expressed by Judge Schultz in his oral decision, as we

agree that even applying the liberal principles favoring the

insured that guide our review of coverage interpretation disputes,

see Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt., 210 N.J.

597, 605 (2012) (providing "coverage provisions are to be read

broadly, exclusions are to be read narrowly, potential ambiguities

must be resolved in favor of the insured, and the policy is to be

read in a manner that fulfills the insured's reasonable

expectations"), plaintiff offered no evidence that the policy's

exclusion was contrary to its reasonable expectations. In any

event, there was no need to interpret the clear language of the

exclusion. See Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)

(quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997))

(stating "[e]xclusionary clauses are presumptively valid and are

enforced if they are 'specific, plain, clear, prominent, and not

contrary to public policy'").

 Affirmed.

 9 A-2833-14T4