**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2361-19

RECON REALTY, LLC,

     Plaintiff-Respondent,

v.

MARJAC, LLC, and RALPH
CESTONE,

     Defendants,

and

100 MILE FUND, LLC,

     Defendant-Appellant.

_____

Argued May 24, 2021 – Decided August 6, 2021

Before Judges Messano and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5355-18.

Daniel J. Cohen argued the cause for appellant (Newman, Simpson & Cohen, LLP, attorneys; Daniel J. Cohen and Daniel C. Stark, on the briefs).

John R. Wenzke argued the cause for respondent.

PER CURIAM

Defendant 100 Mile Fund, LLC appeals from the April 15, 2019 Law Division order that entered summary judgment in favor of plaintiff Recon Realty, LLC, and granted plaintiff an "equitable lien" in the amount of $123,350 on monies defendant received on the sale of real estate. Defendant also appeals from orders denying its cross-motion for summary judgment and its motion for reconsideration. On appeal, defendant argues that plaintiff failed to establish any of the three bases required for imposing an equitable lien. We agree, and we find no remaining genuine issue of material fact. Therefore, we reverse and enter summary judgment in favor of defendant.

I.

On July 21, 2015, Marjac, LLC executed and delivered a note to obtain a loan (the Loan) from defendant's affiliate, 100 Mile S.W.A. (the Affiliate), in excess of $3,200,000. At this time, Marjac owned the property at 466 Prospect Avenue in West Orange (the Property). To secure the loan, Marjac executed a mortgage (the Mortgage) on the Property in favor of the Affiliate. Ralph Cestone, owner and president of Marjac, guaranteed the Mortgage.

A-2361-19

On July 23, 2015, Marjac entered into a brokerage agreement with plaintiff, a real estate broker, to rent and/or sell the Property (the Brokerage Agreement). The Brokerage Agreement entitled plaintiff to a commission on an annual basis for a certain percentage of rental payments made by a tenant procured by plaintiff and, "[i]n the event [Marjac] sells the leased property to [a] Tenant, . . . a commission equal to five [] percent of the selling price . . . upon the closing of title."

Plaintiff procured Club 466 Caterers (the Tenant) to lease the Property and, on September 4, 2016, Marjac and the Tenant entered into a ten-year lease. On March 7, 2017, Marjac entered into a contract to sell the Property to the Tenant for $3,000,000 (the Contract of Sale). Marjac and the Tenant later agreed to increase the price to $3,200,000.

Meanwhile, Marjac failed to pay back its loan to the Affiliate by the agreed upon maturity date. On August 23, 2016, the Affiliate sent Marjac a notice of default and demanded the entire loan balance. On June 13, 2017, the Affiliate assigned the Mortgage to defendant, which duly recorded the Mortgage with the Essex County Register's Office.

On October 12, 2017, defendant and Marjac entered into a forbearance agreement (the Forbearance Agreement). At the time, Marjac owed defendant

A-2361-19

approximately $5,000,000, including the principal, accumulated interest, and related fees. Rather than proceeding with a sheriff's sale of the Property, defendant agreed to accept the terms of the Contract of Sale; defendant agreed to release all liens on the Property for a release price of $3,200,000. Marjac specifically agreed "to pay all sums necessary to effect the Closing and pay the Release Price . . . ."

In November 2017, Marjac advised plaintiff that it was unable to pay the full $160,000 commission owed under the Brokerage Agreement. Marjac also owed plaintiff an outstanding $48,000 balance on the lease. On November 2, 2017, Marjac and plaintiff entered into an amendment to the Brokerage Agreement to reduce the total amount owed from $208,000 to $183,000; plaintiff agreed to accept $123,305 at the time of closing and the remaining $59,695 no later than January 15, 2018. On November 29, 2017, Marjac executed a promissory note, guaranteed by Cestone, agreeing to pay the $59,695 no later than January 15, 2018 and, if not, to pay all legal fees and collection costs.

Before the anticipated sale of the Property to the Tenant, Marjac breached the Forbearance Agreement. On May 1, 2018, defendant and Marjac entered

4

into an amendment to the Forbearance Agreement, wherein the sale was "subject to the approval of [defendant] as to the release price."

On May 7, 2018, Marjac and the Tenant entered into an amendment to the Contract of Sale, reaffirming that "[Marjac] shall be responsible to pay a Commission to [plaintiff] pursuant to [the Brokerage] Agreement dated July 23, 2015 executed by [Marjac] and [plaintiff].  Payment to be made at closing."

On June 12, 2018, defendant notified Marjac and the Tenant that it would release its Mortgage and related security documents on the Property for $3,000,000.  Plaintiff then sent defendant and Marjac a letter on June 20, 2018, stating that it held an equitable lien on the Property and, "if [plaintiff] is not paid its Commission at the time of the closing, it preserves all of its rights to proceed against [Marjac] and [defendant] to recover all sums due an owed."

The Property sale closed on June 21, 2018.  Defendant received $3,000,000 in proceeds and Marjac received $33,570.42 in proceeds, $30,000 of which it placed in escrow.  Plaintiff, however, received no proceeds.

On June 28, 2018, plaintiff filed an order to show cause against Marjac, Cestone, and defendant, seeking to enjoin the transfer of the proceeds from the Property sale closing.  On October 18, 2018, the trial judge issued a consent

A-2361-19

order entering judgment against Marjac for $183,000 plus interest and fees and against Cestone for $59,695.

On December 14, 2018, plaintiff moved for summary judgment against defendant, arguing it held an equitable lien on the proceeds defendant received from the sale of the Property. Defendant filed an opposition to plaintiff's motion, as well as a cross-motion for summary judgment.

After several adjournments, the trial judge heard oral argument on the parties' motions for summary judgment. On April 15, 2019, the judge granted plaintiff's motion and denied defendant's cross-motion, finding that plaintiff established unjust enrichment and "contractual intent" for plaintiff to receive payment. The judge further concluded that justice and equity compelled the imposition of an equitable lien. The judge found particularly persuasive evidence that defendant knew plaintiff was entitled to be paid its commission at closing and that defendant benefited from the sale plaintiff brokered. The judge entered an "equitable lien" in favor of plaintiff in the amount of $123,350. Thereafter, defendant unsuccessfully moved for reconsideration.

This appeal followed, with defendant presenting the following arguements:

A-2361-19

POINT I

THE TRIAL COURT ERRONEOUSLY CONCLUDED THAT RECON HAD AN EQUITABLE LIEN ON 100 MILE'S PROCEEDS FROM THE SALE OF THE PROPERTY.

  A. The Relevant Contracts Do Not Establish an Equitable Lien.

  B. 100 Mile Was Not Unjustly Enriched.

  C. The Equities Favor 100 Mile.

POINT II

EVEN IF AN EQUITABLE LIEN EXISTS, 100 MILE'S FIRST RECORDED MORTGAGE LIEN HAS PRIORITY.

POINT III

THE COURT DID NOT DRAW ALL INFERENCES IN FAVOR OF 100 MILE AND IGNORED THE EXISTENCE OF DISPUTED MATERIAL FACTS.

POINT IV

EVEN IF SUMMARY JUDGMENT FOR RECON WAS PROPER, THE AMOUNT OF THE JUDGMENT SHOULD BE REDUCED.

II.

Our review of a trial court's summary judgment order is de novo, Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016); we

A-2361-19

owe the trial court's analysis no special deference. <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995). Summary judgment is proper when the motion record shows "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>R.</u> 4:46-2(c). A genuine issue of material fact exists when the motion materials, "viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non - moving party." <u>Brill v. Guardian Life Ins. Co.</u>, 142 N.J. 520, 540 (1995).

If there is no genuine issue of material fact, we will then conduct de novo review of the trial court's application of law in deciding the motion. <u>Selective Ins. Co. v. Hudson E. Pain Mgmt. Osteopathic Med.</u>, 210 N.J. 597, 604-05 (2012). Our review on a motion for reconsideration is more deferential. "The decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." <u>Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment</u>, 440 N.J. Super. 378, 382 (App. Div. 2015).

Defendant contends the motion judge erred in entering summary judgment for plaintiff because plaintiff failed to show it held an equitable lien on the Property sale proceeds. We agree.

A-2361-19

"An equitable lien is a right of special nature in a fund and constitutes a charge or encumbrance upon the fund" to prevent unjust enrichment. VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 546 (1994). "For an equitable lien to arise there must be debt owing from one person to another, specific property to which the debt attaches, and an intent, expressed or implied, that the property will serve as security for the payment of the debt." Highland Lakes Country Club & Community Ass'n v. Franzino, 186 N.J. 99, 112-13 (2006) (quotations omitted). "Where one promises to pay for services rendered out of a fund created in whole or in part by the efforts of the promisee, a lien in favor of the promisee will attach to the fund when it comes into existence." In re Hoffman, 63 N.J. 69, 77 (1973). Additionally, an equitable lien can be imposed, if based on the "the dictates of equity and conscience . . . a contract of reimbursement could be implied at law." VRG Corp., 135 N.J. at 546.

Our careful review of the record yields no evidence of the parties' express or implied intent to use the Property sale proceeds as security for plaintiff's commission. While no party disputes Marjac's contractual obligation to pay plaintiff's commission, there is no provision in the Brokerage Agreement, related amendments, or anywhere else in the record pledging the proceeds as security for the commission or requiring the commission to be paid directly from

9

the proceeds. All the relevant agreements and discussions provide for defendant to receive $3,000,000 directly from the proceeds. Kenneth Mandelbaum, plaintiff's salesperson who brokered the sale, assured defendant in a November 1, 2017 email, "you are getting your total dollars" and affirmed the "commission . . . remains [Marjac]'s obligation." Similarly, the HUD-1 settlement statement between Marjac and the Tenant provides for "Real Estate Broker Fees" to be "Paid From [Marjac's] Funds at Settlement". The record establishes two things: (1) defendant's entitlement to its portion of the proceeds and (2) Marjac's separate obligation to pay plaintiff's commission.

Nor do we find evidence in the record to establish that defendant was unjustly enriched at the expense of plaintiff and that its portion of the proceeds should now be subjected to a lien to enforce Marjac's obligation. Unjust enrichment may be a factor in creating an equitable lien. Hoffman, 63 N.J. at 77. To establish unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust", that the plaintiff "expected remuneration", and that the failure to give remuneration unjustly enriched the defendant. VRG Corp., 135 N.J. at 544. Here, defendant received the contractually-agreed upon $3,000,000 from the proceeds and, in doing so, accepted over one million dollars less than it was

10

owed by Marjac. Defendant did not receive an unexpected benefit or undeserved windfall because Marjac did not pay plaintiff's commission.

Even viewing the facts in the light most favorable to the plaintiff, Brill, 142 N.J. at 523, a rational factfinder could not find that an equitable lien should be imposed. Thus, there are no genuine issues of material fact requiring trial, and defendant is entitled to summary judgment as a matter of law. See R. 4:46-2(c). Because we reverse summary judgment for plaintiff and enter summary judgment for defendant, we need not address defendant's remaining arguments.

The April 15, 2019 Law Division order entering summary judgment for plaintiff and entering an "equitable lien" in favor of plaintiff in the amount of $123,350 is hereby vacated. The order denying defendant's motion for summary judgment is reversed and judgment is entered in favor of defendant, dismissing plaintiff's complaint.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION